|    |     |
|----|-----|
| 3  | 279 |
| 46 | 369 |
| 46 | 456 |
| 3  | 279 |
| 53 | 28  |
| 53 | 48  |

## Joseph E. West v. Lewis M. Walker.

The ancient doctrine of the court of chancery was, not to interfere by injunc- tion in cases of trespass, but to leave the party to his legal remedy. The practice of the court is now more liberal; yet in cases of trespass it still ex- pects a strong case of destruction or irreparable mischief to be presented.

[West v. Walker.]

Cutting off the timber from a tract of pine land, valuable only or chiefly for the wood upon it, is not such a case of irreparable mischief as will warrant the granting of an injunction. (*a*)

Nor will the court interfere by injunction though the bill charges that the actual trespassers are poor and unable to respond. (*b*)

The rule formerly was that a complainant, by stating an adverse claim to the property, stated himself out of court. This is not now the case to the same extent as formerly; but where the complainant by his bill discloses a claim on the part of the defendant, and whence derived, he shows that there is a conflict in the title, and furnishes an additional reason why the court should not interfere in matters of trespass where no remediless injury is likely to be sustained.

BILL for injunction to restrain trespasses, filed the fifteenth of April, eighteen hundred and thirty-five. Upon filing the bill an injunction was granted by the chancellor, to restrain the defendant from cutting timber upon lands of the complainant. Before answer the defendant applied to dissolve the injunction for want of equity in the bill. The cause was heard upon the motion to dissolve. The material charges are fully stated in the opinion of the court.

*White*, (attorney-general,) in support of the motion, cited *Eden on Inj.* 136-8-9; 1 *John. Chan. R.* 318; 4 *John. Chan. R.* 21; 7 *John. Chan. R.* 322; 6 *John. Chan. R.* 487; 3 *Paige*, 213.

*Wilson*, contra, cited *Eden on Inj.* 136; 6 *Vesey*, 147; 7 *Vesey*, 305; 18 *Vesey*, 184; 2 *Dessaus.* 616.

THE CHANCELLOR. The bill states that one Somers, who died in seventeen hundred and ninety-five, was seized and possessed, at the time of his death, of upwards of three thousand acres of land in the county of Gloucester. In eighteen hundred and thirteen, the tract, together with other lands, was conveyed to George West, complainant's father, in fee, by Sarah Keen, who had full right to make the sale and to convey. George West possessed the property, and sold off more than one thousand

(*a*) (*b*) See notes at the end of the case.

acres, which is now possessed by sundry persons, holding under his title. He died in September, eighteen hundred and twenty-nine, seized at the time of his death of the residue of the property unsold; and soon after his death all his right became vested in the complainant by divers conveyances, and he entered into possession and still holds it. The property is chiefly covered with pine wood and timber, suitable for cord-wood, which constitutes its principal value.

That about two years since, Lewis M. Walker, the defendant, entered on a part of the premises and began to cut the wood and timber. Complainant instituted a suit against him under the timber act, before a justice of the peace, which was discontinued on the day of trial in consequence of the illness of the complainant. The defendant then desisted from cutting, and having removed his residence from the state, no other suit was brought. Complainant has lately visited the property and found laborers engaged in cutting and felling timber, who said they were workmen of Walker, and cutting by his order. Complainant has since been informed that defendant, under some claim or pretence of title to some part of said premises, has within a short time past been engaged in cutting wood and timber on them to a considerable amount. That he carries off the wood while green, contrary to usual practice; whence complainant concludes, that defendant, knowing he has no valid title, wants to put the wood out of complainant's reach. Since defendant last commenced cutting he has cut from three hundred to five hundred cords of wood, and complainant is informed and believes that he has made pretended sales of standing trees to different persons, to cut on shares; that they have proceeded to cut and carry away some wood and timber; and that these sales have been made to persons of little property, and unable to respond for the damage that may be sustained. That Walker is still cutting and wasting, and the complainant believes he will continue to do so unless restrained.

In the charging part of the bill, it is alleged that Walker, among other things, pretends to be seized of the whole or of cer-

36

tain parts of said premises by title derived from one William
Jonas Keen.   The complainant charges that Keen owned only
part of the property, and no part of that was ever conveyed to Wal-
ker, or any one from whom he may claim; but that all Keen's
title is now vested in him, the complainant, by divers sufficient
assurances.   That Sarah Keen owned in fee certain other parts
of the premises now belonging to the complainant, in which Wil-
liam Jonas Keen never had any interest except in right of his
wife, who survived him, he having died more than twenty years
ago.   That she, Sarah Keen, was seized at the time of her
death and sold to the complainant's father.

There is the usual prayer for an account and an injunction.

On filing this bill an injunction was ordered to issue, according
to the prayer of it.   And now, without having answered, the
defendant comes in and prays that the injunction may be dissol-
ved or set aside, for want of equity in the bill.   I have looked
carefully into the subject, and am of opinion that the injunction
was improvidently issued, and should now be set aside.

The case made by the bill is one of trespass.   The ancient
doctrine of the court was, not to interfere in cases of trespass,
but leave the party to his legal remedy.   As late as the time of
lord Thurlow, there was no precedent for an injunction to restrain
a trespasser.   Afterwards, in *Flamang's* case, he relaxed the
rule, because of the irreparable *ruin* which would have followed
his refusal.   See 7 *Ves.* 308.   The same thing was done in *Ro-
binson* v. *lord Byron*, 1 *Bro. C. C.* 588; but the court was very
cautious in the exercise of the power.   At this day the practice of
the court is even more liberal; yet, in cases of trespass, it still
expects a strong case of destruction or irreparable mischief to be
presented.   This is undoubtedly the true ground.   This court
ought never to interfere in the first instance, except in cases of
pressing necessity.   The only difficulty is, to apply the law to
the multitude of ever-varying cases, which constantly present
themselves.

In a case of trespass very similar to the present, for cutting and
carrying the wood and timber from wood-land, principally valua-

[West v. Walker.]

ble on account of its timber, chancellor Kent refused an injunc-
tion, although it was alleged there as here, that the actual tres-
passers were poor and unable to respond. The court said, if the
precedent were once set, it would lead to a revolution in practice;
for trespasses of this kind are daily and hourly occurring. In
*Garstin* v. *Asplin and others,* the general principle is held, that
the court cannot interfere in a naked trespass where there is a
full remedy at law: 1 *Mad. R.* 90. And in *Livingston* v. *Liv-
ingston,* 6 *John. Chan. R.* 497, the court said, there must be
something particular in the case, so as to bring it under the head
of quieting possession, or to make out a case of irreparable mis-
chief, or where the value of the inheritance is put in jeopardy.
The same doctrine is maintained in the case of *Jerome* v. *Ross,*
7 *John. Chan. R.* 333, and it is asserted to be the true rule of
both English and American courts of equity.

It is important to preserve this principle. The courts of com-
mon law are the proper tribunals to dispose of actions of trespass.
To introduce them generally into this court, would occasion great
trouble and additional expense, and must necessarily lead to the
frequent investigation of legal titles.

On examining the case before me, I do not discover in it any
of those peculiar circumstances which will justify me in taking
it out of the general rule. Considering it in the most favorable
light for the complainant, the party defendant is simply a tres-
passer. He has entered upon the plaintiff's property and is cut-
ting wood. It is pine land, and he is using it as others use pro-
perty of that description, and in the only way in which it can be
used. Several laborers, according to the bill, have been engaged
in felling timber, and have cut from three to five hundred cords
of wood. This can scarcely be considered an irreparable injury
to a tract of over two thousand acres of land. There is nothing
to prevent a recovery at law, and the party must seek his remedy
there.

It would seem, too, from the bill, that the defendant sets up an
adverse claim to the land, or to some part of it. This presents an
additional difficulty in the way of an injunction, especially when

[West v. Walker.]

there is no suit at law pending, or offered to be brought, to establish the right. The law formerly was, that a complainant, by stating an adverse claim to the property on the part of the defendant, stated himself out of court. This is not now the case to the same extent as formerly. But when the complainant undertakes to disclose in his bill a claim on the part of the defendant, and what the claim is, and whence derived, as is done in this case, he shows that there is a conflict as to the title, and furnishes an additional reason why this court should not interfere in matters of trespass, where no remediless injury is likely to be sustained.

The authorities cited by the complainant's counsel are distinguished from this case. In *Mitchell* v. *Dors*, 6 *Ves.* 147, an injunction was granted against one who, having begun to get coal from his own ground, had worked into that of the plaintiff. Lord Eldon went on the authority of lord Thurlow in *Flamang's* case, and considered it a case of irreparable mischief; whether justly or not, is not material as to the principle. In *Hanson* v. *Gardiner*, 7 *Ves.* 305, there is nothing decided material to the point involved in this case. The chancellor reviews some of the authorities, and concurs in opinion, that an injunction may issue in cases of trespass, to prevent irreparable mischief. In the case of *Thomas* v. *Oakley*, 18 *Ves.* 184, the defendant was injoined from taking more stone out of a quarry than he was entitled to; and that, too, is founded on the opinion of Thurlow in *Flamang's* case. Lord Eldon asks if there can be any distinction between a stone quarry and a lead mine? "Is not this (he inquires) taking away the very substance of the estate, just as much as in the case of a coal mine?" Now, admitting there is no difference between a quarry and a mine, does not the taking of coal from the one and lead from the other differ materially from cutting and taking away wood and timber from our pine lands? The first can never be replaced; the other is comparatively a temporary loss—a few years may replace it.

It is very evident that some confusion has been introduced into this branch of equity jurisdiction by extending the injunction to

[West v. Walker.]

cases of trespass.   Lord Eldon, with all his caution and forecast, was evidently embarrassed in attempting to carry out the innovation.   And, doubtless, there will always be differences of opinion as to what shall be considered an irreparable injury, such as cannot be compensated by damages.   Human wisdom is unable to lay down any general rule that will be applicable to all cases. Each one, as it arises, must be judged in some measure, by its own peculiar circumstances.   The present is one which, in my opinion, does not warrant the interference of this court in the first instance.   If the complainant will proceed at law, and clearly establish his right, and the defendant shall persist in repeated acts of trespass, equity may then interpose to quiet possession and to prevent a multiplicity of suits.

The injunction must be set aside, but without costs.

---

## NOTE A.

A very frequent ground of application for injunction in this state, and perhaps the most important, is that of restraining the waste or destruction of timber.   These applications are usually made in cases of disputed title to unenclosed wood lands, where the soil is unproductive, and the timber constitutes almost its entire value.   The case disclosed in the bill is ordinarily that of a continuous or oft-repeated trespass, the complainant alleging title and possession in himself, and that the defendant is engaged in cutting off the timber, to the irreparable injury of the inheritance.   Since the decision in *West* v. *Walker,* contained in the text, it has been understood that an injunction would not be granted under such circumstances, though an action at law were depending for the trial of the title, unless there was some special matter charged in the bill, to take the case out of the general rule—that an injunction will not lie in a case of mere trespass. Upon such a state of facts the injunction has been repeatedly denied at chambers, though not upon argument.   The only case

[West v. Walker.]

recollected, in which the question has been directly before the court upon argument, since the decision contained in the text, is that of *Shreve* v. *Black and McKnight*, argued in December, A. D. eighteen hundred and forty-one. The bill in that case states title and possession in the complainant, and a claim of title by the defendants; charges a trespass by the defendants for which an action at law was immediately instituted and is still pending undecided; repeated trespasses by the defendants since the commencement of the suit at law; and that at the time of filing the bill the defendants were engaged in cutting and clearing off the timber and converting wood land into arable land; and that they threatened to cut off the greater part of the wood upon the tract. Upon filing the bill, notice of the application was, by order of the chancellor, given to the adverse party, and the cause came on for hearing at a special term. On the eve of the argument, one of the defendants answered, denying the complainant's title and possession. The chancellor refused the application, upon the ground that the answer had denied the whole equity of the bill, without expressing a decided opinion upon the case made by the bill. He said, "I confess that the discussion before me, and the tracing of the English cases, has staggered my faith in the view which has been taken by some of my predecessors on this subject. Injunctions have repeatedly been granted in cases of mere trespass, and that too when committed under pretence of title. The complainant, by stating the injury to have been committed under allegation of title, does not state himself out of court, as to the injunction. This kind of injury, too, by cutting timber on land where it constitutes its chief value, is an irreparable injury."

If, however, the injunction will be dissolved upon the ground that the title or possession, or both, of the complainant is denied by the answer, it is obvious that the injunction will afford no protection in cases of disputed title to unenclosed lands. Both parties have frequently a title *prima facie* valid; neither has the actual *pedis possessio*, or any further possession than is evinced by occasional acts of ownership. The dispute is very

[West v. Walker.]

frequently a mere question of location or boundary. Under these circumstances, is the property to become the spoil of the most rapacious or grasping claimant? Is the party in possession to be despoiled of his inheritance by a mere trespasser, without his consent and against his will; or will chancery not only grant the injunction, but continue it, notwithstanding the defendant's answer, until the title is determined at law? If not, then the extraordinary anomaly is presented, that if the complainant abandons his possession, admits the possession of the adverse claimant, and brings an ejectment to recover possession, a court of law will protect his property from destruction; but if he insists upon his possession, he must submit to the utter destruction of his inheritance, for neither a court of law or equity will protect it.

It is the constant practice in courts of law, in actions of ejectment, before trial, to grant a rule to restrain the defendant from committing waste or destruction during the pendency of the action. "Where there is a contest for land, courts of law will, as far as possible, keep the property from waste, and in the state in which it was at the time when the suit commenced:" *Den* v. *Kinney*, 2 *South.* 552; *Bush* v. *Phillips*, 3 *Wend.* 428; *Denning* v. *Corwin*, 4 *Wend.* 208. And the rule is granted, as well where the defendant claims by an adverse title, as in cases of technical waste, or where there is a privity between the plaintiff and defendant. Courts of law will also, in actions of dower, grant a rule upon the defendant, though he be the owner in fee of the land, to stay waste pending the action: 2 *South.* 717.

The policy of the court has been, to preserve the property in dispute from waste or alteration pending the action, as far as practicable, without interfering with the ordinary use of the property by the party in possession.

The ancient doctrine, that a court of equity will not interfere by injunction to prevent trespass or waste where the title is in dispute, has been materially qualified. The court has repeatedly interfered in such cases, not for the purpose of trying the legal

right, but to preserve the property unchanged, until the title is tried at law; and for this purpose the injunction will be granted against a party in possession, claiming by an adverse title.

As early as the year eighteen hundred and eight, in *Shubrick* v. *Guerard*, 2 *Dess.* 616, chancellor Rutledge granted an injunction to restrain the defendant from cutting timber and committing other waste, until the trial and determination at law of the rights of the parties; the defendant being in the possession of the land, which he claimed by an adverse title, and there being a suit pending to try the title at law.

In *Jones* v. *Jones*, 3 *Mer.* 173, on demurrer to a bill by an heir at law, for an injunction to restrain the devisee in possession from committing waste and destruction, the will being in dispute, sir William Grant, master of the rolls, said, "No case was cited in which the court interfered, at the suit of an heir or devisee, to restrain waste or destruction by either, while they are litigating their adverse rights in a court of law;" but he added, "I own I cannot see a very good reason why the court which interferes for the preservation of personal property in the ecclesiastical court, should not interfere to preserve real property pending a suit concerning the validity of the devise." In this case the demurrer was sustained, as it would seem, mainly, if not entirely, on the ground that the party applying for the injunction, was not proceeding with due expedition to bring the question of title to a decision.

In *Fingal* v. *Blake*, 2 *Molloy*, 50, (12 *Eng. Con. Chan. R.* 337,) an injunction was granted, on the application of a devisee, to restrain the heir at law in possession from cutting timber, although the will was not established and the title was disputed as between the devisee and heir at law; and the lord chancellor (Hart) says, "I have long doubted the soundness of the old decisions with respect to waste. I think the court has jurisdiction to restrain waste by the heir disputing the will of real estate, and will do so at any time on motion. I have no doubt that the court will now, in such a case, readily exercise its powers to prevent irreparable injury to the property."

[West v. Walker.]

In *Pillsworth* v. *Hopton*, 6 *Ves.* 51, and in *Storm* v. *Mann*, 4 *John. Chan. R.* 21, injunctions were denied against the party in possession claiming by a title adverse to the plaintiff. It is worthy of remark, that in the former case no action at law was pending to try the title, and in the latter the ejectment had been pending nearly eighteen months without having been brought to a trial. The chancellor, however, places the decision on the doctrine that equity will not interfere until the title is determined at law. It does not appear in either case how long the cutting had been continued, nor to what extent it was carried.

In cases of mere trespass, courts of equity have repeatedly held, that where the damage was great and irreparable, or by constant repetition calculated to do lasting injury to the inheritance, they would interfere to prevent the evil, and this where the right was disputed. See *Flamang's* case, cited in *Hanson* v. *Gardiner*, 7 *Vesey*, 307; *Robinson* v. *lord Byron*, 1 *Bro. C. C.* 586; *Mitchel* v. *Dors*, 6 *Vesey*, 147; *Courthope* v. *Mapplesden*, 10 *Vesey*, 290; *Crockford* v. *Alexander*, 15 *Vesey*, 138; *Twort* v. *Twort*, 16 *Vesey*, 128; *Kinder* v. *Jones*, 17 *Vesey*, 109; *Earl Cowper* v. *Baker*, 17 *Vesey*, 128; *Grey* v. *duke of Northumberland*, 13 *Vesey*, 236, and 17 *Vesey*, 281; *Thomas* v. *Oakley*, 18 *Vesey*, 184; *Whitechurch* v. *Holworthy*, 19 *Vesey*, 213; *Shubrick* v. *Guerard*, 2 *Dess.* 622 n.; *Livingston* v. *Livingston*, 6 *John. Chan. R.* 500; *Southard* v. *Morris Canal and Banking Co.*, *Saxton*, 518; *N. Y. Printing and Dying establishment* v. *Fitch*, 1 *Paige*, 99.

An important inquiry would seem to be, whether the cutting of the timber is carried, or threatened to be carried to such an extent as to create a case of irreparable mischief, or to put the value of the inheritance in jeopardy. The case in the text, of *West* v. *Walker*, does not go the length of deciding that cutting off all the timber upon the premises is not a case of irreparable mischief.

The distinction suggested by the chancellor, between cutting timber, and taking ore from a mine or stone from a quarry, does not seem to be countenanced by the authorities.

37

[West v. Walker.]

" This protection" (of injunction to restrain trespasses on the ground of preventing irreparable mischief, and the destruction of the substance of the inheritance) " is now granted in the case of *timber*, coals, lead ore, quarries, &c.:" *Livingston* v. *Livingston*, 6 *John. Chan. R.* 499.

" If this protection would be granted in the case of *timber*, coals, or lead ore, why is it not equally to be applied to a quarry ? The comparative value cannot be considered : *Thomas* v. *Oakley*, 18 *Vesey*, 187.

" Lord Thurlow changed his opinion upon that, holding that if the defendant was taking *the substance of the inheritance*, the liberty of bringing an action was not all the relief to which in equity he was entitled. The interference of the court is to prevent your removing *that which is his estate :*" *Thomas* v. *Oakley*, 18 *Vesey*, 186. See also *Courthope* v. *Mapplesden*, 10 *Vesey*, 290 ; *Hamilton* v. *Worsefield*, 10 *Vesey*, 290, *note c. ; Crockford* v. *Alexander*, 15 *Vesey*, 138 ; *Twort* v. *Twort*, 16 *Vesey*, 128 ; *Kane* v. *Vanderburgh*, 1 *John. Chan. R.* 11.

## NOTE B.

There is no charge in the bill that Walker, the defendant, was insolvent or unable to respond in damages at law, and the omission is adverted to and insisted upon by the attorney-general in his argument. The charge is merely, that certain individuals to whom Walker had sold portions of the property, and who were not made defendants, were unable to respond. The court will interfere to prevent a mere trespass, where *from the irresponsibility of the defendants* or otherwise, the complainant could not obtain relief at law : *Hart* v. *Mayor of Albany*, 3 *Paige*, 214 ; Accord. *Smallman* v. *Onions*, 3 *Bro. Cha. R.* 623.

And the practice in New-Jersey is believed to be in accordance with these decisions. In *Read* v. *Cornelius*, which was a bill

[West v. Walker.]

for an injunction to restrain a trespass, at July term, eighteen hundred and thirty-seven, chancellor Dickerson intimated that he would allow the injunction, if the bill charged that the defendant was insolvent or unable to respond in damages; and in *Norcross* v. *Fisher and Jaggard*, an injunction having been allowed by a master, the bill charging the inability of the defendants to respond in damages, chancellor Pennington, at June term, eighteen hundred and forty-one, refused to dissolve on motion, and put the defendants to their answer.