The complainant requests the issuance of a preliminary injunction to enjoin the defendant from contravening the complainant's occupancy of certain lands in the Township of Pemberton. The supporting and counter-affidavits, from which an understanding of the facts is to be attained, are contradictory and divergent. An abridgment of them will adequately exhibit the discordant posture of the proofs.
The lands are in the main in a natural and unproductive state. They are contiguous to a lake where the inhabitants of the village and of other neighboring communities assemble for recreation and enjoyment during the summer months.
On behalf of the complainant it is deposed that during the summer months of the years 1921 until about August, 1924, one Hubert Noteboom was in notorious possession of the lands. Whether his possession was in character adverse or permissive is not definitely revealed. On August 23d 1924, the lands were exposed to public sale by the collector of taxes to recover a delinquent assessment for the year 1923 amounting, with interest and costs, to the sum of $316.78. Noteboom was the purchaser. He is now president of the complainant company. Although the tax sale certificate was not recorded, he continued his possession of the lands in the exercise of a right equivalent to that of a mortgagee in possession. On May 21st, 1928, he assigned his tax certificate to the complainant and the certificate and assignment were then recorded. The complainant is said to have since enjoyed the uninterrupted possession of the lands until the occurrence of the alleged trespasses by the defendant in April, 1944.
In recent years there were erected upon the lands at the lake side "a small shed," some "bath houses" and a "canoe house." It is inferred from their description that these structures were of an inexpensive type. The business then originated of providing the use of the bath houses and canoes for *Page 205 
patrons during the summer seasons. It is asserted that on or about April 4th, 1944, the representatives of the defendant entered upon the lands, removed the canoe house and the canoes from the property, and that the defendant now wrongfully usurps possession of the lands.
The affidavits presented by the defendant are explanatory and tend to introduce additional facts of significance. They purport to disclose that pursuant to agreements dated October 21st, 1920, May 17th, 1921, and June 20th, 1923, all recorded in the clerk's office of the County of Burlington, Hubert Noteboom was in charge of the lands as the sales agent of the owners. On May 27th, 1941, Geoffrey G. Mayo, the owner of the lands, redeemed them from the tax lien of 1923 for which they had been sold, paying as well the taxes levied for the years 1924 to 1927, inclusive. The payment amounted to $1,049.92. The tax collector explains that he thereupon on June 7th, 1941, informed Noteboom by registered letter (the return receipt is exhibited) of the redemption of the property by the owner and requested him to surrender his certificate and accept payment of the amount due thereon. The certificate was not surrendered, and on June 14th, 1941, the collector issued to the owner a certificate of redemption which was recorded in the office of the Burlington County clerk on July 15th, 1941. The fund received by the tax collector in redemption of the lands is retained in a special account and is available to the complainant or to the present owner of the tax sale certificate. It is surmised that the desirability of the lake and its shores for recreational pursuits manifestly increased. The defendant municipality resolved to acquire the lands with other tracts for the uses and purposes of a public park, and pursuant to requisite proceedings the lands were purchased by and granted to the defendant by the deed of Mayo and wife dated May 15th, 1942, and duly recorded on June 29th, 1942.
During the summer of 1943 the business at the lake to which reference has been made was being conducted on a portion of the premises by Max and Herman Introligator. An action in ejectment was instituted against them by the present defendant in the Burlington County Circuit Court *Page 206 
on August 4th, 1943. The seasonal tenancy or privilege of those occupants being about to expire, they did not undertake to defend the action. A judgment in favor of the municipality eventuated on March 21st, 1944.
In obedience to a writ of execution, the sheriff of the county removed the canoe house and the canoes from the property. Evidently the action of the sheriff constituted the alleged trespasses charged in the present bill. The complainant was not a party defendant in the ejectment action although it might have been so joined. R.S. 2:51-3; N.J.S.A. 2:51-3. No conclusive effect is accordingly ascribed to the judgment in relation to the complainant's right of possession. R.S. 2:51-45; N.J.S.A.2:51-45. Nor can any decisive legal significance be here attributed to the acknowledged circumstance that the tax collector through inattention and perhaps error has since 1923 continued to accept from the complainant the taxes annually assessed against the lands described. In reply the affiant Noteboom deposes, upon information and belief, that the owner of the lands did not undertake to redeem them from the tax lien, but that the pretended redemption was conducted by members of the Brown's Mills Improvement Association, an organization having no interest or estate in the lands.
The intervention of Chancery in cases of trespass was not conferred by the ancient doctrine of the court. Adequate remedy was deemed to be available in the courts of law. Research has failed to uncover any reported precedent for injunctive relief against a trespasser until Lord Thurlow, in circumstances indicative of an irreparable injury to the substance of the complainant's estate, reluctantly enjoined the trespasser. The proceeding is identified as Flamang's Case, to which reference is made in 6 Ves. 147 (1801); 7 Ves. 308 (1802), and 8Ves. 90 (1803). In Mitchell v. Dors, 6 Ves. 147, Lord Eldon recognized it as an authority and granted restraint in a case of irreparable mischief. Fonblanque in his treatise on Equity (1820), in expressing his assurance that equity would restrain trespass, cited Mitchell v. Dors, supra; Comthorpe
v. Mapplesden, 10 Ves. 290; Crockford v. Alexander, 15 Ves.138; 16 Ves. 110; 18 Ves. *Page 207 184. The power was very cautiously and sparingly employed and its exercise seems initially to have evolved from the established jurisdiction to enjoin the commission of waste, in which cases privity of title was an essential element. Irreparable injury of a serious and permanent character and destructive of the estate then became a factor. The practice of the court was gradually but hesitantly liberalized. 1 High on Injunctions (4th ed.) 660§ 697; 4 Pom. Eq. Jur. (5th ed.) 964 § 1357; 2 Lawrence Eq.Jur. 960 § 869.
In 1835 our Chancellor Vroom resolved that this court ought never to interfere in such cases in the first instance except on occasions of "pressing necessity" and in "a strong case of destruction or irreparable mischief." West v. Walker, 3 N.J. Eq. 279; Quackenbush v. Van Riper, Id. 350. In 1883 Chief-Justice Beasley, in Ballantine v. Harrison, 37 N.J. Eq. 560,562, stated: "No case can be found in the volumes of our reports that purports to hold that the mere taking possession of lands and holding them vi et armis, will form a basis for the arrest of the doing of such wrong by the arm of equity." Cases of waste, threatened irreparable injury or destruction of the inheritance and those involving constitutional or statutory rights were however recognized as exceptional. Thereafter many cases arose in which this court by decree and injunction protected legal rights in real estate. Mr. Justice Dixon at the November term, 1886, of our Court of Errors and Appeals collated those then exemplified in our Chancery reports and separated them into nine categories. Hart v. Leonard, 42 N.J. Eq. 416;7 Atl. Rep. 865.
In Dill v. Board of Education of Camden, 47 N.J. Eq. 421;20 Atl. Rep. 739, Vice-Chancellor Pitney remarked (on p. 440) that the omission of other cases in the classification found inHart v. Leonard, supra, should not be construed as a repudiation of their authority. See, also, the comments of Vice-Chancellor Lane in Renwick v. Hay, 90 N.J. Eq. 148;106 Atl. Rep. 547.
Our reports now contain a broad variety of cases in which upon satisfactory proof of the basic facts and for cogent reasons, equitable relief has been granted in restraint of the commission or continuance of injurious trespasses. Cases, *Page 208 
however, in which a court of equity has undertaken to determine a substantial dispute over a private legal right in land and to enforce that right if found to exist are indeed rare. Mason v.Ross, 77 N.J. Eq. 527; 77 Atl. Rep. 44.
Notwithstanding the more expensive assortment of adjudicated cases, none, I think, can be regarded as a precedent for the issuance of a preliminary injunction in the state of the proofs here existing. The right of the complainant to the possession of the lands is of a legal nature resting upon a purely legal basis. The right of the complainant to possession is not admitted; it has not been established in an action at law, nor can it be said to be clear from uncontroverted facts and the application of settled legal rules. Indeed, the complainant's interest in the lands is in grave doubt. Cf. Rayhertz, c., Co. v. Fulton,c., Co., 124 N.J. Eq. 121; 200 Atl. Rep. 557. In injunction cases, "to doubt is to deny" is a familiar maxim. Where, as here, the suit is against a single defendant and a substantial dispute of the legal rights of the parties to the possession of the property exists, and no further damage of an irreparable consequence is to be reasonably apprehended, there is no reason for equity to intrude before the rights of the parties are settled at law. Worthington v. Moon, 53 N.J. Eq. 46;30 Atl. Rep. 251; Colloty v. Stein, 80 N.J. Eq. 405; 84 Atl. Rep. 193;Lake Lenore, Inc., v. Delaware, Lackawanna and Western RailroadCo., 113 N.J. Eq. 533; 168 Atl. Rep. 178; Fidelity Union TrustCo. v. Cochrane, 116 N.J. Eq. 190, 194; 172 Atl. Rep. 800.
The controversy is now essentially one concerning an alleged tortious taking of unimproved land by the defendant, for which a remedy including damages for mesne profits is afforded by the courts of law.
The application for preliminary restraint is denied. The bill will be retained to afford the complainant a reasonable opportunity to establish its right to possession. Todd v.Staats, 60 N.J. Eq. 507; 46 Atl. Rep. 645; Mason v. Ross,supra. *Page 209