THE ATTORNEY-GENERAL ex rel. EASTON and McMAHON *vs.* THE NEW YORK AND LONG BRANCH RAILROAD COMPANY.

1. The provision in the act incorporating the New York and Long Branch Railroad Company, and in the supplement thereto authorizing the company to bridge the Raritan river, that suitable and sufficient draws should be made to bridges so as not to obstruct navigation, is not a prohibition against building a bridge, if navigation should be at all obstructed thereby, but a simple requirement that the draw should be *sufficient not to obstruct navigation.*

2. Under an authority given by charter to a railroad company to cross a river by bridge or ferry, *as may be most convenient,* the railroad company are the judges as to which will be most convenient. That a bridge would be less convenient to navigation than a ferry, does not deprive the company of the right to build a bridge.

3. In such a case, the *convenience* of both the navigation and the railroad interest is to be regarded.

4. A work authorized by the legislature cannot be adjudged a nuisance, if executed in an authorized manner, in an authorized place.

5. Where a franchise is granted by the legislature to a railroad company to bridge a navigable river—the highway of a large and extensive commerce, moving under the same legislative authority—the legislature must be regarded as having acted with a view to the claims of both interests, and each as against the other is entitled to all that a reasonable construction of the grant will justify. And though the navigation interest may be deprived, by the later franchise, of desirable facilities to which it has been accustomed, and even be subjected to much inconvenience, it has no redress, unless it be on the ground of an existing contract between the legislature and those whose interests are thus interfered with.

6. Where the construction of an important public work has been permitted to proceed almost to completion, in full view of all parties that could be affected thereby, and large expenditures and liabilities have been incurred, and no action is taken to prevent the progress of the work for more than fourteen months, this court will not interfere by preliminary injunction.

7. A mere objection, or protest, or threat to take proceedings, is not sufficient to exclude the consequence of laches or acquiescence in such a case.

8. The extent of expenditure in the execution and construction of a public work, is, to a certain degree, the measure of the acquiescence.

9. It will not relieve a party from the consequence of his delay in bringing suit for injunction, that he was at liberty to look for protection to legal proceedings instituted by another party, who had a far greater interest in the matter, when the injunction sought was denied in a former suit brought in the virtual interest of such other party.

10. A stronger case of delay is required to affect those who assert a public right, than where a private right alone is in dispute, but delay even in such case is not without effect.

11. The progress of a public work, of much importance to the people, who, through the legislature, have authorized it, will not be enjoined, except in a case clearly calling for the intervention of the court.

---

The bill in this case is filed by the Attorney-General, at the relation of James T. Easton and James McMahon, of the city of New York, and by the relators as complainants. The latter are shippers, largely interested in the carrying trade on the Delaware and Raritan Canal.

The object of the bill is to restrain the defendants from further proceeding in the erection of a bridge over the Raritan, between South Amboy and Perth Amboy, and for the removal of so much of the structure as has already been built. The present application is for a preliminary injunction. The defendants have answered, and affidavits have been submitted on both sides.

*Mr. Gilchrist,* Attorney-General, *Mr. T. N. McCarter,* and *Mr. J. C. Besson,* for complainants.

*Mr. F. T. Frelinghuysen* and *Mr. B. Williamson,* for defendants.

THE CHANCELLOR.

By their act of incorporation, *Pamph. L.*, 1868, *p.* 852, the defendants were authorized and empowered to survey, lay out, and construct a railroad from any point at or near the village of South Amboy, to any point on the line of the Raritan and Delaware Bay Railroad, north of Eatontown, with the privilege of extending the same to Long Branch, the road to run by the way of the villages of Matawan and Red Bank. They were also authorized and empowered to build and maintain over such rivers and streams as the road might cross, such piers and bridges as they might deem expedient, provided that suitable and sufficient draws should be made over any navigable stream, so as not to obstruct the navigation thereof.

By a supplement, approved March 30th, 1869, *Pamph. L.*, *p.* 807, they were authorized and empowered to extend their road from the beginning point, as laid down in the act of incorporation, across the Raritan river, to connect the same at or near Perth Amboy, with the Woodbridge and Perth Amboy Railroad, or any railroad then or thereafter to be built; and it was enacted that they should have, in relation to such extension, all the rights, powers, privileges, and restrictions contained in the act of incorporation, with power to cross the Raritan river by means of a bridge or ferry, as might be most convenient.

By a further supplement, approved April 1st, 1869, *Pamph. L.*, *p.* 1191, it was enacted that the bridge authorized by the supplement of March 30th, should be provided with a draw of not less than one hundred feet in width.

The company, having made their location, began building the bridge in the fall of the year 1871, and have actively continued their work upon it, with an interruption of two or three months (from December, 1872, to January or February, 1873), and the structure is now nearly completed. The plan adopted by their engineers, with the sanction of the directors, is a truss bridge over the deep water, about twelve hundred feet in length, to consist of spans of one hundred and fifty

feet in length each, resting on stone piers; in the shallow water, it is to be made on piles. The plan provides for a pivot draw parallel to the channel and current, with two openings of one hundred feet each, resting on a stone pier. The total length of the draw over all, is to be about two hundred and seventy-two feet.

The complainants insist that this bridge is being constructed in a location wholly unauthorized—over Raritan bay, not over Raritan river. They also insist that the supplements and the original act must be read together, and that by a just construction the defendants are under a double prohibition—are prohibited from building a bridge, if it will be less convenient to navigation than a ferry (as it undoubtedly will be), and from building a bridge at all, if it will materially obstruct navigation; that the plan of the bridge is such that, if its construction be permitted, it will prove a most serious, permanent obstruction to navigation, inflicting great injury upon most valuable and important public and private interests, the great magnitude of which is set forth in the bill and its accompanying affidavits; that if the defendants, for the purposes of their enterprise, prefer a bridge to a ferry, they should at least be required to build one in such manner as not to interfere with the peculiar navigation of the river; that they should be required to build it of such a height (forty feet or thereabouts) from the water as to allow a steam tug, with her tow of canal boats, to pass under it.

On the other hand, the defendants insist that the bridge is authorized by their charter and its supplements; that its location is in the place designated for the purpose by the legislature, over the river; that its plan is free from objection, and that if the bridge be constructed according to the plan, no material injury will be done to navigation; that they have not only complied with the requirements of their charter, but in their effort to accommodate navigation, have exceeded the provision they were required by law to make in that behalf, the law requiring them to place in the bridge only one draw, of at least one hundred feet in width, and

they having provided for two draws, of one hundred feet each. They also insist that the complainants, by their delay in applying to this court in the premises, have forfeited all right to the relief they seek.

The first question which presents itself for consideration is, whether the structure which is the subject of complaint is a public nuisance; for, if it be such, the court should not hesitate to put a stop to it, and in such case it is best for all parties that the prohibitory power of the court be exercised at once.

That the company are authorized to build a bridge over the Raritan river, under certain circumstances, cannot be disputed. The complainants insist that the defendants have no authority to do so if the bridge will materially obstruct navigation, or if it will even be less convenient to navigation than a ferry. For the support of the first branch of this proposition, they adduce the provisions of the charter in respect to bridges, and the first supplement, which extends the restrictions of the original act to the extension of the road thereby authorized. The authority given to the defendants, in the charter, to bridge the streams their road might cross, is not on condition that they will not, in so doing, obstruct navigation at all, but on condition that their bridges shall have *sufficient draws, so as not to obstruct navigation;* and when, by the supplement of March 30th, 1869, power was given to the company to bridge the Raritan river, it was (applying the restriction of the charter) on the same condition, that the bridge should have a *sufficient draw,* so as not to obstruct navigation. *Pennsylvania R. R. Co.* v. *N. Y. & L. B. R. R. Co.,* 8 *C. E. Green* 157. By the supplement of April 1st, 1869, the legislature declared what should be a sufficient draw for this bridge—a draw of not less than one hundred feet in width. In this legislation, the legislature, with the whole subject before them, and with full power over it, and aware of the peculiarity, as well as of the importance of the navigation interests to be affected, authorized, and manifestly intended to authorize, the defendants to build a

bridge (if that should be more convenient than a ferry) over the Raritan river, without direction or restriction as to its construction in the interests of navigation, except that it should have a draw of at least one hundred feet in width.

This brings us to the consideration of the remaining branch of the proposition, that the company have no right to build a bridge at all, if it will be less convenient to navigation than a ferry. The counsel, on both sides, substantially agreed as to the meaning of the legislature in the use of the word "convenient" in this connection; that to a certain extent the convenience of both the navigation and the railroad enterprise is to be regarded.

The query presents itself, who is to determine whether the one or the other, the bridge or the ferry, be most convenient? The company are to act. They are to build the one or establish the other, as may be most convenient. Who is to determine for them, which will be the most convenient? It is said to be unreasonable, if not absolutely absurd, to hold that the company should determine this question for themselves. But the courts have so held, nevertheless. *Stephens & Condit Transportation Co.* v. *Central R. R. Co.*, 5 *Vroom* 281. The legislature created no commission, nor did they erect or indicate any tribunal for the purpose. They neither provided nor designated any means of determining the important question What then remains, but the conclusion that the company were left to exercise their discretion, and act at their peril? It may not be out of place to remark, that while the company could not have had recourse to the courts for the decision of the question, those whose interests were threatened might have exercised a control over this discretion. They were at liberty to challenge it, and to draw into controversy, in the courts, the plans and designs of the defendants, under the authority of the act and its supplements. Good faith, and reasonable diligence, and the necessary interest in the subject matter, are all the prerequisites that this court would have demanded of the complainants in such case, to insure a hearing.

Again, the legislature might have been appealed to, to modify their grant, if it had proved too extensive, or threatened to be injurious to interests that ought to be protected and fostered, or to impose new or further necessary or proper conditions or restraints upon its grantees. If such applications have been made, they have been unsuccessful.

If, then, the work which the defendants are constructing, is a work authorized by the legislature, it cannot be adjudged to be a nuisance, provided it be executed in an authorized manner, in an authorized place. *Rex* v. *Pease,* 4 *B. & Ad.* 30. Are the defendants building the bridge in accordance with legislative authority? They are, if they are building it in the place and manner directed. As to the place: The evidence fails to satisfy me that the structure is located over Raritan bay, and not over the river. And, as already remarked, the plan proposes to provide all the accommodation for navigation required by the act of the legislature.

The legislature imposed no condition upon the defendants, in respect to navigation, except in connection with the width of the draw. They did not require them to provide for the convenience of canal navigation in any other way. Before them were the navigation interests, with their great importance, and they were asked to grant a franchise to another, different and very important transportation interest. The claims of the former were not unregarded, nor were the demands of public travel disregarded. The legislature acted with a view to each, and each, as against the other, is entitled to all that a reasonable construction of the grant will justify. And though the one interest may thus be deprived of desirable facilities to which it has been accustomed, and even be subjected to much inconvenience, it has no redress, unless it be on the ground of an existing contract between the legislative authority and those whose interests are interfered with.

It must not be forgotten, also, that the public, as such, are interested in both. *Rex* v. *Pease,* 4 *B. & Ad.* 30.

The complainants allege, however, that the draws in this bridge will be built and placed obliquely, and not at right an-

gles, across the current or channel, so that it will be extremely difficult and dangerous for vessels to pass through them. This is explicitly denied by the defendants, who allege that, on the contrary, they will be at right angles to the channel and current, and will afford every accommodation and relief to the shipping and transportation carried on, through and on the waters of the Raritan river and bay.

If the consideration of the testimony on this head, left me in doubt, I should not hesitate to stay the progress of the work until the doubt should have been removed. But such has not been its effect.

The complainants, admitting that the flood tide sets truly through the draws, allege that the ebb runs obliquely, and that currents are produced which will carry boats, while being towed out of the river on the ebb tide, against the piers of the bridge. This apprehension does not appear to me to be well founded. The evidence satisfies me that no considerable objection to the draws can be based, either on the velocity, or the strength, or direction of the current.

The objections made by the complainants, are not new discoveries to the Delaware and Raritan Canal Company. They made them in their protest and notice served on one of the contractors for building the bridge, on the 5th of December, 1871 ; and yet, in the suit, brought in this court in April, 1872, against the defendants by the Pennsylvania Railroad Company, as lessees and representatives of the canal company, (the solicitor of the complainants in which was the attorney by whom the notice alluded to was signed on behalf of the company), although the object of that suit was to restrain the defendants from proceeding in the construction of this bridge, they set up none of these objections. It is worthy of remark, also, that the centre pier of the draw had been built, and the whole structure so far completed as that a few days work was all that was required to finish it, when the bill in this cause was filed.

For many months, the defendants have been permitted to proceed with the construction of the bridge. The amount of

their expenditures and liabilities incurred in the work, is necessarily a very large sum. It is claimed to be $200,000, besides the amount—over $50,000—of their purchases of land for the approaches and abutments of the bridge. They have been engaged in this construction openly, in full view of all parties navigating the river, or being in Perth Amboy or South Amboy. The complainants can hardly have been unaware of the proposed plan of the bridge. Up to the time of the commencement of this suit, the public have taken no action whatever in the premises. The relators have taken none in any court, until the filing of their bill in the Circuit Court of the United States for the District of New Jersey, in February of this year. They certainly have known, from the time when the first piles were driven, where the defendants intended to locate the bridge; from that time, they have known what its general character was to be. That was manifested by the mode of construction. They have made it part of their case, that notice was given to the defendants by the Delaware and Raritan Canal Company, on the 5th of December, 1871, of objections to the work. Those objections were: That the bridge would cross the channel diagonally, and in such manner as to destroy the navigation. That it was located in an improper place, and that the defendants had no authority from the legislature to construct it. From this notice, it seems indisputable that the plan of the bridge was understood as early as December 2d, 1871, the date of the notice. This notice was not given by the complainants, but if they are allowed the benefit of it, it will not avail them on this motion. It cannot be imputed to them for diligence. A mere objection or protest, or a mere threat to take legal proceedings, is not sufficient to exclude the consequence of laches or acquiescence in such a case as the present. A notice was indeed held to be sufficient, in the case of *The Attorney-General* v. *The Hudson River R. R. Co.*, 1 *Stockt.* 527; but in that case, the notice was given before the work began, and the bill was filed in a very few days after the notice was served. If acquiescence cannot be imputed to the complain-

ants, they certainly are chargeable with delay, which, though it may not amount to proof of acquiescence, may be sufficient to disentitle the complainants to the summary interference of the court, by interlocutory injunction; and this principle applies, with peculiar force, where the act complained of is caused by a public company in the execution and construction of their works. The extent of the expenditure is, to a certain degree, the measure of the acquiescence. *Kerr on Injunctions, pp.* 202–206.

The complainants, Messrs. Easton and McMahon, insisted, however, that they were at liberty to look for protection to the legal proceedings instituted by the canal company, who had a far greater interest in the navigation than they. But if this be conceded, it will not avail them. In the case of the Pennsylvania Railroad Company against the defendants above referred to, this court denied the motion for an interlocutory injunction, and the suit there rested. That was an adjudication of this court, as appears by the bill, on the very subject of controversy in this cause, and this application would be summarily ruled by it, but for the circumstance that this bill is filed in the public interest. The proceedings hitherto unsuccessful, but still pending, taken by the relators in the Circuit Court of the United States, were commenced too recently, to avail the relators on the score of diligence.

The public, as represented by the attorney-general, stand in no better position than the relators, and are bound by the like rules. Though a stronger case of delay is required to affect those who assert a public right, than where a private right alone is in dispute, delay, even in such cases, is not without effect. *Att'y-Gen.* v. *Sheffield Gas Consumers Company,* 3 *D. M. & G.* 304.

The work which it is sought to enjoin is a public enterprise of much importance to the people of this state, who, through their legislature, have authorized its construction. I find no evidence of bad faith on the part of the defend-ants, nor even any imputation of it. This court is always

reluctant to stay the progress of such enterprises, and will only do so in a case clearly calling for its intervention. *Allen* v. *Monmouth Freeholders,* 2 *Beas.* 68 ; *M. & E. R. R. Co.* v. *Prudden,* 5 *C. E. Green* 537. If the defendants have erred in judgment, in bridging the river at all, or if, having the power to construct the bridge, they have disregarded the rights of the navigation interest, they may be called to answer for it in the courts of law. Whatever they have done in this work has been, and whatever they may do in it will be, at their peril in this respect. They receive no license or immunity by the refusal of this court to interfere with them on this application.

The motion for an interlocutory injunction is denied, and the bill dismissed, with costs.