Meredith v. Sayre.

32    557
52L  509

WILLIAM T. MEREDITH and others

*v.*

ROBERT W. SAYRE and others.

1. Equity will not enjoin a municipal corporation from lawfully vacating a public street.

2. A railroad company that enters into an agreement with the owner of lands adjoining a street, and, in that agreement, merely refers to such street as a landmark, does not thereby dedicate such street to the public; nor is the fact that such street is designated as an existing highway on a map of lands condemned by the company, any evidence of dedication.

3. An exchange between an owner and such corporation, and their deeds, conveyed lands on such street.—*Held,* that while such recogni-

tion of the street was tantamount to a dedication, it would not prevent either of them from seeking to vacate it by lawful means.

4. Delay on the part of an adjoining owner, until the work has been done, in remonstrating against or trying to prevent the occupation of a street by a railroad company with its tracks and chutes, &c., involving an immense outlay of money, will be fatal to his application for relief.

Bill for relief. On final hearing on pleadings and proofs.

*Mr. Cortlandt Parker*, for complainants.

*Mr. T. N. McCarter*, for Sayre and the Easton and Amboy Railroad Company.

*Mr. W. Paterson*, for the city of Perth Amboy.

THE CHANCELLOR.

The bill is filed to restrain Robert H. Sayre and the Easton and Amboy Railroad Company from seeking to obtain the passage, by the municipal authorities of the city of Perth Amboy, of an ordinance vacating a portion of a street in that city called High street; and, also, to enjoin the members of the common council of that city from passing or voting for such ordinance; and it prays a decree declaring that the ordinance which the common council propose to pass, vacating a part of that street, is contrary to the agreements made by and between Mr. Sayre and the railroad company, of the one part, and the complainants of the other, and that it is contrary to a dedication of the street which the complainants insist Mr. Sayre and the railroad company have made, and that it is a fraud on the complainants' rights. It also prays that certain erections and constructions which the railroad company has placed across the street, and by which the use of the street, as a thoroughfare, is completely obstructed, may be abated as a nuisance, and the street restored to the condition in which it was

when those obstructions were placed there; and it also prays for general relief.

The complainants are the owners of certain land in Perth Amboy, lying on the easterly side of High street (which is a street of ninety-nine feet in width), north of Buckingham avenue. They formerly owned property on the other side of that street, also, but in 1876 exchanged it with Sayre (who was trustee for the railroad company), for other property lying on the easterly side of the street. The street was extended, by city ordinance, over the property of the complainants in 1867, and has existed ever since. In 1873, the railroad company was seeking the passage of an act of the legislature authorizing it to take, by condemnation, such land as and where its directors might think proper, along the line of its road, for depots and side tracks, at or near either of its termini. Opposition to the passage of this act was made on behalf of the owners of the Meredith property, which resulted in the following agreement, signed by Sayre, acting for the railroad company:

"We will agree to take no land, by condemnation, south of the north line of Alfred Hall, and northeast of High street, and only so much of the Meredith estate west of High street as may be necessary for our tracks to wharves to be built on the Meredith property. On condition that there is no further opposition made to our bill."

On the agreement was endorsed a hastily-made, rude sketch of the probable position of the tracks. It showed High street and the railroad crossing it. The opposition to the act was withdrawn on the making of that agreement, and the act was passed. In 1875, the company began proceedings for the condemnation of land of the Meredith estate on the west side of High street. Those proceedings were opposed by the persons interested in the estate, but, during the progress of them, an agreement for exchange was made, between Sayre and the owners of the estate, by which the former gave to the latter, in exchange for land on the west side of High street, land on the east side of that street, and they reserved a right of way over a strip of sixty-

six feet wide—from the west side of High street, directly opposite the Meredith land on the east side, to an old road.

By the agreement for exchange, and the deeds conveying the property in pursuance thereof, the existence of High street was acknowledged by bounding the lands thereon, and, by the map which was filed by the company in the proceedings for condemnation, the existence of the street there was also admitted.

The complainants insist that the agreements, deeds and maps constitute a dedication of High street, as between the company and themselves, and that, as between those parties, the street cannot be altered or abandoned.

The company has constructed its tracks across the street north of Buckingham avenue, and in a tunnel under the street there, wholly preventing the use of it as a highway at that point. The bill alleges that Sayre induced one Buckley, an employe of the railroad company, and an owner of land on High street, north of Buckingham avenue, to join him in a petition to the common council to vacate and completely close High street, north of Buckingham avenue. They did so petition, and an ordinance was introduced in the common council to vacate High street, between the northerly side of Buckingham avenue and Crane creek, and to lay out another street sixty-six feet wide, to be called Parker street, in lieu of it. The proposed new street is in the *situs* of the old road before mentioned, to which the road reserved by the owners of the Meredith estate, in the exchange with Sayre, leads from High street. To enjoin the common council from passing that ordinance is one of the objects of this suit.

The complainants, as before stated, claim that, by the agreement made on the withdrawal of opposition to the proposed act of the legislature, and by the agreement for exchange, and the deeds given in pursuance thereof, and the map in the proceedings for condemnation, a dedication of High street was made, and they insist that it was made in such a manner as to prevent Sayre and the railroad company from seeking to vacate the street. That claim cannot

be maintained. In the agreement made on the withdrawal of opposition to the proposed act of the legislature, reference to High street (which was then an existing, established street) is made merely to indicate the situation and locality of lands. The language is, " We will agree to take no land by condemnation south of the north line of Alfred Hall, and northeast of High street, and only so much of the Meredith estate west of High street as may be necessary, &c." This is no dedication. It is merely a description of the exempted lands by reference to the street as a mere landmark.

Nor is the map in the proceedings for condemnation evidence of dedication. It merely lays down the street as an existing highway. By the agreement for exchange and the deeds, the lands conveyed by Sayre are bounded on High street. This would, indeed, prevent him and the company from denying the existence of the street, and is equivalent to a dedication of his and their land in the *situs* of the street to the purposes of the street, inasmuch as it recognizes the existence of the street, but it does not prevent him or them from seeking to vacate the street by lawful means. To seek to vacate the street is not inconsistent with such dedication, but is consistent with it, and violates no duty imposed by or flowing from it. Surely, one who sells land bounding it, in the description of it in his deed for it, on an existing street, is not thereby barred from ever making or participating in an application to the proper authorities to vacate it. He, indeed, cannot, while the street exists, deny its existence, and will be held to have conveyed the land in front of the property conveyed by his deed, to the middle of the street, but, nevertheless, he will be entirely at liberty to ask and endeavor to bring about a vacation of the street by lawful means, and will not be estopped from so doing by his deed. Mr. Sayre and the railroad company were entirely at liberty to petition the common council to vacate the street, and to urge the passage of the ordinance requisite to effect the purpose. The common council are possessed, under the charter of the city, of the power to vacate the street, and in

Meredith v. Sayre.

the absence of fraud this court will not interfere with them in the exercise of that power. And, moreover, their exercise of their lawful powers cannot be abridged or affected by any dedication or agreements by or between the land owners.

The complainants urge that the common council, by the vacation, will destroy, without compensation, what they claim to be their vested right of highway appurtenant to their land. If the common council have lawful authority to do so, and are acting *bona fide*, equity will not restrain them, though their action be injurious to the complainants. If, by constitutional law, they are bound to make or provide for compensation on vacating the street, and do neither, the law will give relief against their unwarranted action.

When a municipal legislature is acting *bona fide* within the scope of its authority, equity will not interfere with its action. There is nothing in this case to show that the common council are acting *mala fide*. The presumption is, that they are acting in entire good faith. They are acting within the scope of their authority. There is no ground for enjoining them.

In *Paterson &c. H. R. Co.* v. *Mayor &c. of Paterson, 9 C. E. Gr. 158*, the passage of an ordinance by the common council of the city of Paterson was enjoined on the ground that the proposed action was not *bona fide*. The ordinance was the withdrawal of the consent of the city to the laying of the rails of a horse railway, upon which consent the railway company had laid the rails, and operated and were operating the road.

But the complainants insist that they are entitled to relief, as against the railroad company, on the ground of nuisance, because of the obstruction of their right of way over High street. It appears, conclusively, that the very extensive and very expensive structures of which the complainants now complain, were all completed long before the bill was filed. The bill was not filed until 1877, and the work was completed, and the street entirely obstructed, when the

agreement for exchange was made, which was September 11th, 1875.

Mr. Sayre testifies as follows on the subject: " There were eighteen elevated railroad tracks upon the trestle-work; about two hundred and twenty piles driven in the street, supporting the tracks, and six tracks at a lower level, say thirty-three feet lower, and four covered tunnel ways; these tracks lead from the main track to the wharf for loading vessels; the wharves are eight hundred feet long, sixty-five feet wide, with chutes or pockets on top of them, and canals of one hundred feet between them, where vessels lie between them; there are three coal wharves and two freight wharves now; in the summer of 1875 there were two coal wharves and one freight wharf; the trestle-work where the road crossed High street was twenty-two feet above the natural level of the street; the road was in operation in 1875; we commenced running coal on the 29th day of May, 1875; High street was completely obstructed by those works; that was the state of things at the time we were negotiating for the agreement " (the agreement for exchange).

Mr. Brodhead testifies that, at the time of making the agreement, the only way of access which the complainants had from their land to the inhabited part of the city was by the way which is the *situs* of the proposed Parker street, and he gives, as the reason, that the whole space, between what he calls Parker street and the water, was occupied by the railroad tracks, and was impassable for any vehicle.

Mr. Sayre swears that when the agreement for exchange was made, the Merediths not only did not complain of the obstruction of High street, but that they gave as their reason for reserving the way of sixty-six feet in width, mentioned in the agreement, on the west side of High street, that it was in order thus to connect their property lying along the shore with the town and their adjacent property, to have egress from their property lying along the shore. He is corroborated by the agreement and the deed from the Mere-

37

diths, for the reservation in both is declared to be intended to create in the Merediths a right of way, to give egress, ingress and regress from their lands, both those conveyed by Sayre to them and their other lands on the easterly side of High street, to the westerly line of the land out of which the reservation is made. He says that the Merediths knew, at the time the agreement for exchange was made, that the company intended to procure the vacation of High street. He swears, also, that he had a conversation with William T. Meredith (who appears to have been acting for the Merediths in the matter), while the negotiations for the agreement were in progress, about expressing in the agreement their consent to the vacation of High street; that he (Sayre) desired that it should be expressed in the agreement, but Mr. Meredith objected to "putting himself on record in that shape," but assured him positively that they would in no way aid or ask for the opening of that street, or attempt to open it.

Mr. Brodhead testifies that he heard a conversation on the subject, at that time, between Mr. Sayre and Mr. Meredith. He says Mr. Sayre wanted Mr. Meredith to agree that High street should be vacated; and Mr. Meredith replied, in substance, that he did not propose to take any action towards having it opened, but that it was a matter which was within the power of the council of Perth Amboy, and that, if the city caused it to be opened, he did not want to place himself in a position that would prevent him from deriving any benefits that might result from such opening.

Mr. William T. Meredith says that Mr. Sayre said they would make the exchange if the Merediths would give up High street; that he then told Mr. Sayre that they were not willing to surrender High street; that Mr. Sayre then said they would not make the exchange, unless the Merediths gave up High street; that Mr. Sayre then went out of the room, was gone ten or fifteen minutes, and returned, and, to his surprise (he adds that he was very much surprised), said he would make the exchange as he (Mr. Meredith) had

offered to make it. When asked whether, in that conversation, he objected to "putting himself on record in the shape" of consenting to the vacation of High street, but assured Mr. Sayre that he would in no way aid or ask for the opening of that street, or make any attempt to open it, he replied: "No; I don't remember any such expression or idea; nor did I desire to convey any such idea; nor would I have been willing to convey such idea." He was then asked "Did, or did not, any such conversation occur?" and he answered, "Not that I recollect; according to the best of my recollection, it did not." It will be seen that he opposes his recollection only to the positive testimony of Messrs. Sayre and Brodhead.

The weight of testimony, on this point, is against the complainants. The Merediths then knew that the company was desirous of vacating High street, and they knew the reason; and yet they rested for a year from that time before applying for relief against the works, which, even then, completely obstructed the street. Their negligence in making their application would be enough, standing alone, to deprive them of the relief of abatement which they ask. Mr. Brodhead testifies that the company has expended about three-fourths of a million of dollars in the tracks, trestles and piers (including grading) at Perth Amboy.

The complainants have waited until at least a year after the whole work was completed, before coming into court for relief. Their property is in an unimproved part of the city. No inconvenience, of any account, is inflicted on them by reason of the obstruction complained of. They complain merely of the loss, by means of the obstruction, of a source of value to their property. If the city has the right to vacate the street, and shall lawfully do so, they will suffer no injury for which they will have a right to redress at the hands of this court.

The bill will be dismissed, with costs.