# THE DELAWARE, LACKAWANNA AND WESTERN RAILROAD COMPANY

## v.

## HENRY W. BRECKENRIDGE et al.

A court of equity is without jurisdiction of an action to enjoin a continued trespass on lands by the maintenance across them of pipes laid under the surface, where the right to relief depends on the question of the complainant's being the owner of the legal title to the land, which has not been determined by a court of law, the trespass being one not involving irreparable injury, and one for which an action in ejectment affords full and complete relief.

On bill, answer, replication and proofs.

*Mr. J. Franklin Fort*, for the complainant.

*Mr. Joseph M. Roseberry, Mr. Henry S. Harris* and *Mr. Sherman* (of the Pennsylvania bar), for the defendants.

EMERY, V. C.

This is a bill for a mandatory injunction and other equitable relief against the continuance of trespasses on lands alleged to be in complainant's possession, as lessee of the Morris and Essex Railroad Company, and against the continued forcible occupation and forcible detention of these lands. The principal invasion of complainant's rights, which is complained of, is the laying of pipes for the transportation of oil beneath the surface of an undergrade crossing, made by the Morris and Essex railroad in the original construction of its railroad across a farm in Warren county, then belonging to one Cornelius Stewart, and over which crossing the railroad continues to be operated by complainant under the lease. Stewart conveyed to the Morris and Essex Railroad Company a strip of land through this farm, by deed dated March 26th, 1864, the deed stipulating, among other things, for the erection of this undergrade crossing. Complainant claims that the Stewart deed conveys the exclusive title

and right of possession to the soil under the roadway of the undergrade crossing, subject only to a right of way across the surface of the road. The defendant Breckenridge claims title to the roadway and the right to lay pipes under the surface of the soil, his claim of title being based upon conveyances of lots or parcels of the original Stewart farm on each side of the crossing, made by the grantees of Stewart's title after his conveyance to the railroad company, and also upon conveyances subsequently made by the heirs or devisees of Stewart of the title remaining in Stewart, to all of the lands described in his deed to the company after his conveyance to the railroad company.

The defendant Breckenridge claims that, by the true construction of complainant's deed, the title to the soil under the surface of the roadway of the crossing did not pass to the railroad company, and further that, by his deeds, he has the title and right to possession of the roadway, which title he holds in trust for the defendant the United States Pipe Line Company.

Under this claim of title, the pipe line company, about October 27th, 1895, laid two pipes under the roadway of the crossing, and, for the purpose of preventing the forcible removal of the pipes by the railroad company, themselves occupied the whole of the undergrade crossing, enclosing it by fences and other obstructions reaching upon the embankments of the railroad, and retained possession of these structures by force. These structures were, as was agreed by counsel at the hearing, placed around the entrances to the undergrade crossing for the purpose of defence against the complainant in its attempts to remove the pipes, and not under any claim of right to put them there as a permanent structure, this intention being disclaimed in open court. On October 29th, 1895, a bill was filed in this court by Breckenridge to enjoin the complainant from removing the pipes which had been laid, and an application for a preliminary injunction was made before Vice-Chancellor Bird, who granted an *ad interim* stay against the removal of the pipes pending the hearing. The application for preliminary injunction was denied after argument, upon the ground that, by the true construction of the Stewart deed, the title to the soil under the roadway was

in the railroad company, and the pipe line company was a trespasser.

Upon the injunction being refused, the complainant thereupon attempted to remove the pipes and structures, but the defendants resisted the attempt and by force retained possession of the whole crossing for that purpose. This bill was thereupon filed by the Delaware, Lackawanna and Western Railroad Company for the purpose of obtaining a declaration that the laying of the pipes for the purpose of transporting oil through them and the erection of these structures is a continuing trespass on the lands of the complainant, and also to compel the removal of the pipes laid and to enjoin the future laying of the pipes or other trespass on the lands of complainant or the interference with its peaceable and exclusive possession.

Pending the hearing, a restraining order was granted on the application of complainant, and afterwards modified on application of the defendants, the effect being to retain the *status quo* and to allow the pipes and structures to remain pending the hearing. The structures erected by defendants at the crossing still remain, but since the restraining orders, the force of men has been withdrawn. Counsel upon both sides desire an adjudication upon the main question in dispute, viz., the right of the railroad company, under the deed from Stewart, to the exclusive possession of the soil under the roadway, against the subsequent grantees or devisees of Stewart, under whom defendants claim. On the facts now appearing, this is a pure question of the construction and legal effect of the deed to the railroad company. The defendants, in their answer, raise no objection to the jurisdiction of this court, and counsel on both sides, at final hearing, request the construction to be made in order that the rights of the parties may be put in course for a final determination on appeal, and they have fully argued the question of construction. But it is apparent that this question of title, as now presented, is a question of purely legal title, asserted upon one side and denied upon the other, and this being the aspect of the case, the preliminary question must necessarily be whether a court of equity has jurisdiction to determine this legal title.

*Ballantine* v. *Town of Harrison, 10 Stew. Eq. 561 (Errors and Appeals, 1883)*, and *Hart* v. *Leonard, 15 Stew. Eq. 416 (Errors and Appeals, 1886)*, are both cases where the jurisdiction was denied on appeal from decrees entered on final hearing, without (so far as appears by the reports) any objection taken in the court below to the jurisdiction, and these cases settle the rule that before deciding upon the question of legal title it must first appear that the court of equity has jurisdiction. This question must therefore be first examined. The first case, *Ballantine* v. *Harrison*, makes irreparable injury the test of equitable cognizance over cases involving the tortious taking and holding of real property, and it was said (*Chief-Justice Beasley, p. 562*) that "no case could be found in our reports purporting to hold that the mere taking possession of lands and holding them *vi et armis* will form the basis for the arrest of the doing of such wrong by the arm of equity." In *Hart* v. *Leonard* inadequacy of legal remedy is made a test, and it was declared that where the legal right of complainant, though formally disputed, is yet clear on facts which are not denied and legal rules which are well settled, a court of equity would have jurisdiction where the bill is filed to ascertain the extent of the right and to enforce or protect it in a manner not attainable by legal procedure. Complainant's counsel insist that the construction of the deed and its legal effect in reference to the points now disputed are well settled by several adjudications of our courts, and rely upon several cases as establishing the jurisdiction of a court of equity to enjoin continuing trespasses in such cases. But none of these cases in which injunctions were issued reach to the present case.

In *Morris and Essex Railroad Co.* v. *Hudson Tunnel Co., 10 C. E. Gr. 384 (1874)*, the case principally relied on, Chancellor Runyon, in directing an injunction against occupation of complainant's land, says (at *p. 388*) that if the complainants' proprietary rights had been invaded, they were entitled to protection and that the trespass was of a continuous nature. But the decision was not placed upon the ground solely of such trespass to land, but upon the fact that the defendant, a railroad incorporated under the general law, was required first to make com-

pensation, and that this right to compensation before entry was one to be protected by injunction.   The later cases in the court of errors and appeals, above cited—*Ballantine* v. *Town of Harrison, Hart* v. *Leonard*—both put the right to protection by injunction in such cases on the protection of express constitutional or statutory right to compensation before entry, and on that alone.

In *Carlisle* v. *Cooper, 6 C. E. Gr. 576,* also cited by counsel, the legal right was established or admitted, and the object of the bill was to define the right and protect it by means unattainable at law.   The sole claim to equitable jurisdiction in the present case, must, as it seems to me, under our decisions, be placed upon the inadequacy of the legal remedy.   Now, so far as the removal of the pipes already laid is concerned, the remedy by ejectment accomplishes this precise object.   The actual fixing of the pipes and their forcible detention in the soil by defendant, seems certainly to constitute such an actual possession of the soil occupied by them as to sustain an action of ejectment.   The right of the owner of the soil of a highway, or other way subject to a right of surface passage, to bring ejectment, is settled in our state (*Wright* v. *Carter, 3 Dutch. 76 ; Burnet* v. *Crane, 27 Vr. 285, 288*), and in several cases, pipes of this character laid in the soil under grants of rights in the soil, are held to be real estate under the tax laws.   *Pipe Line Co.* v. *Berry, 23 Vr. 308 ; State* v. *Haig, Collector, 29 Vr. 295.*

The only additional remedy now asked, therefore, would be the injunction against the laying of other pipes hereafter, either in the same or any other part of the roadway.   If the defendants, after their right to lay the present pipes is determined against them by the proper court, should attempt or threaten to lay other pipes in other portions of the same roadway, on the assertion of the same rights, which had been adjudicated against them, a distinct ground of equitable jurisdiction for relief against the repeated assertion of unfounded claim would probably arise, but there is nothing in the present case which would justify the retention of the decision of the legal rights here, upon the ground that the defendants intend hereafter to assert any such claim.

The mere laying of the pipes beneath the surface does not interfere with the complainant's occupation and use of the lands conveyed, for the purposes of its railroad and the continuance of the pipes under the surface is manifestly not an irreparable injury to the property itself. The real injury to the complainant from the laying of the pipes, as set out in its bill, is the invasion of its proprietary right in the lands and the forcible detention of the lands by the defendants for the purpose of transporting oil through the pipes, this transportation of the oil being in itself (if the complainant's claim of title is well founded) a continuous trespass on complainant's lands for the sake of profit. This right of transportation across its lands, complainant, as proprietor, and in the absence of any statute allowing the lands to be taken by condemnation, is entitled either to allow at its own price or to refuse altogether.

Some cases, notably *Goodson* v. *Richardson, 9 L. R. Ch. 221,* seem to protect mere proprietary rights by injunction, where the defendant sets up no fair claim of right whatever, and where it is doubtful whether ejectment could be brought. But this case, if it can be relied on as to extending to proprietary rights in general the protection by injunction, was criticised in *Ballantine* v. *Harrison, 10 Stew. Eq. 563,* as not in harmony with the current of authorities. In *Goodson* v. *Richardson* all of the judges seemed to be of the opinion that the 'only clear legal remedy of the complainant was an action of trespass, and that there was no clear right to ejectment, and the general doctrine of the English courts is that the remedy by injunction cannot be used simply to accomplish the object of an ejectment. *Deere* v. *Guest, 1 Myl. & C. 516 (13 Eng. Ch., 1836).* Sir George Jessel, in *Cooper* v. *Crabtree, 20 Ch. Div. 589, 592,* distinguishes between an enormous injury to the property of the complainant and an actual damage done by the trespass. The injury to the property in these cases of infringement of proprietary rights consists, he says, in the landowner being deprived of the large sums which he would be entitled to claim for the privilege of crossing, and he refers to cases where injunctions were granted. But all of these cases, except, perhaps, *Goodson* v. *Richardson,* were

cases in which ejectment did not lie, and other circumstances were sufficient to give a court of equity jurisdiction.  Except in those instances where the proprietary right is expressly protected by constitutional or statutory provision against seizure without compensation, our courts have not yet recognized the mere proprietary right in real estate as entitled to be protected by injunction, in the absence of facts showing the inadequacy of legal remedies.  The equitable remedy in this case, so far as relates to the removal of the pipes now laid, could give no different relief from the execution in ejectment, and this legal remedy would go beyond the equitable remedy, inasmuch as a recovery in ejectment carries with it the right to recover damages for *mesne* profits, which may, perhaps, extend beyond the mere value of the land and may compensate complainant for the injury to his proprietary right.   *Sedgw. Dam. (5th ed.) 133, 134.*

I conclude, therefore, on the authority of the two decisions above cited, that, as the case now stands, I have no right to adjudicate upon the main question in dispute, viz., the legal title of the parties to the soil under the roadway, but that the same must first be settled at law   So far as relates to the claim in complainant's bill, that the defendants, by their structures on the crossing, and otherwise, have interfered with the care and necessary protection of the embankments, culvert and drains, I think the complainant is entitled, pending the settlement of its legal right in the roadway, to be protected by injunction against any interference with its access to and passage over the crossing, for the operation of its railroad and the protection and care of the roadbed, with its appurtenances.  Whatever may be the ultimate decision as to the rights to the soil, the complainant has the undoubted right to such access to and over the crossing without interference, and the proofs show that a case has arisen for the interposition of a court of equity in the control of the crossing to this extent pending the litigation.  This aid will, however, be granted to the complainant only upon the equitable terms that such access and passage are not to be used for the purpose of removing the pipes, and the further condition that

the complainant shall, without delay, bring its action at law to determine its legal rights.

There is another reason in this case for directing the title to the roadway to be settled at law. The right of a court of equity to interfere by injunction for the protection of legal title does not generally exist unless the legal title has been settled, either by admission of the parties or by suit at law, or the legal rules on which it depends are so well settled as not to require further adjudication at law. At the argument of the cause, I was inclined to agree with the complainant's contention that Vice-Chancellor Bird's opinion and the cases referred to by him in denying the preliminary injunction in the Breckenridge suit had settled the construction and operation of complainant's deed, in accordance with the claim of complainant. *State* v. *Brown, 3 Dutch. 13*, decides that a conveyance of lands in fee to a canal company to have and to hold " as long as used for a canal," conveys a qualified fee, under which, so long as the estate continues, the grantee has the same rights and privileges as if it were a fee-simple absolute, and that, during its continuance, the grantor had no reserved rights in the land upon which he could claim to be riparian owner of them. In *Fitzgerald* v. *Faunce, 17 Vr. 536 (Errors and Appeals, 1884)*, it was held that the conveyance of the right &c. for the purposes of fishing, and for no other purpose, of a tract of land, conveyed the exclusive use of the lands for this purpose, and would prevent the grantor being considered the riparian owner of the lands. Where lands are taken by condemnation, however, the company is entitled only to an easement in the lands condemned, for the purposes of its charter, and the condemnation leaves the fee in the owner of the land, with right to make such use of it as will not prevent the company from having the full enjoyment of the easement. *New Jersey Zinc and Iron Co.* v. *Morris Canal and Banking Co., 17 Stew. Eq. 398 (Van Fleet, V. C., 1888); affirmed on appeal, 2 Dick. Ch. Rep. 598.*

And it seemed to me that the English cases mainly relied on by defendants' counsel (*United Land Co.* v. *Great Eastern, 17 Eng. Railw. Cas. 164; S. C., 10 Ch. App. Cas. 586*) differed

D., L. & W. R. R. Co. *v.* Breckenridge.

radically from the present case in several particulars, one of them being that they were cases where the title of the railroad company, although consummated by deed, was considered as taken directly under the act of parliament only, and held, therefore, under rights strictly analogous to the title taken by condemnation under our statutes.   But, upon consideration of the case, I find a decision in our own courts not referred to by counsel on either side, or called to the attention of Vice-Chancellor Bird, which seems to raise a question whether complainant's title, under the language of this deed, conveys any greater right, in respect to the lands at this crossing, than it would have acquired by condemnation.   This arises from the fact that in the deed from Stewart to the railroad company, in this case, the *habendum* limits, or purports to limit, the estate in fee, which was granted, by the granting words of the deed, " to the uses and purposes of the charter," and the question arises, what effect, if any, this limitation in the *habendum* has upon the estate in fee previously limited in the granting part of the deed.

In *Green* v. *Morris and Essex Railroad Co., 1 Beas. 165* (*Chancery, 1858*), one Green conveyed to the Morris and Essex Railroad Company, their successors and assigns forever, the right to take possession of, hold, have, use, occupy and excavate a certain tract of land, with liberty to erect embankments &c., and to do all other things which shall be suitable for the completion or repair of said road,

" to have and to hold the said tract of land and premises unto the said The M. & E. R. R. Co., and to its successors and assigns forever, for the purposes above mentioned and for all the other purposes mentioned in the said act of incorporation and the several supplements thereto."

This is the language in the *habendum* of complainant's deed. Chancellor Williamson was of opinion (see *1 Beas. 172, 173*) that the language in the deed being the same as the language of the sixth section of the act, which defined the rights the company would acquire by assessment, the deed confined the company to the same use of the land as the act confined them to under the assessment.   And the fact that the seventh section of the charter,

providing that upon payment of the compensation fixed by assess-
ment the corporation shall be deemed to be seized and possessed
in fee of the lands, was not referred to as affecting the rights
under the sixth section. The learned chancellor held that the
deed did not relieve the company from the obligation imposed
by their charter to provide a suitable farm crossing. On appeal,
Mr. Justice Brown, delivering the opinion of the court (*Morris
and Essex Railroad Co.* v. *Green, 2 McCart. 469*), says (at *p.
475*) that it may fairly be questioned whether, upon a fair con-
struction of the deed, it did release the company from the charter
obligation to construct the roadway, but that decision of this
point was not necessary and would be reserved. Mr. Justice
Depue, in *Perry* v. *Pennsylvania Railroad Co., 26 Vr. 178
(Supreme Court, 1893)*, commenting on the above decision of
Chancellor Williamson on the construction of the deed, recog-
nizes the language of the deed as different from the language of
usual conveyances of land, and does not refer to the decision in
the *Green Case* as overruled by the subsequent decisions. In
the *Green Case* the question involved was, it is true, the con-
tinued existence of charter obligations as to crossings, notwith-
standing the deed had been given, and the case may for other
reasons not be applicable to the decision of the present question,
but it may be fairly questioned whether the *ratio decidendi* of
the case, as stated by Chancellor Williamson, does not reach the
present case, and whether it has been overruled by the later
decisions relied on by the complainant. The case leaves the title
as one which should be settled definitely at law, and for this
additional reason the bill should be retained, as suggested in
*Hagerty* v. *Lee, 18 Stew. Eq. 256*, until after suit at law. The
form of the order will be settled on notice, and the addition of
the Morris and Essex Railroad Company as complainant may
then be formally made as stipulated by counsel, if desired.