The events having pertinency to the present litigation are scattered over a span of more than forty years. All have been congregated and duly considered, but this memorandum will accomplish its practical purpose if subdued to a summary of those occurrences of predominant significance.
On January 8th, 1903, the complainant acquired the ownership of an extensive tract of land in the County of Middlesex in a vicinity then known as Chrome. The lands have subsequently been encircled by the territorial boundaries of the present Borough of Carteret. The undertaking to develop and elaborate the property for residential use was probably affiliated with the local enterprise of the Canda Manufacturing Company.
On May 25th, 1903, the complainant filed in the office of the county clerk a map upon which the division of the tract into lots, blocks, streets, and avenues was delineated, and simultaneously the complainant filed an indenture of even date, which in essential particulars reads as follows:
"KNOW ALL MEN BY THESE PRESENTS that, in dedicating the lands for Streets and Avenues indicated on this map for public uses as highways, the Canda Realty Company intends to make and does make only a qualified dedication of such lands for such uses, and has reserved, and hereby specifically and expressly reserves, to itself, and to its special and expressed assigns of the matters hereby reserved, the exclusive franchises, easements, rights and privileges in said lands so dedicated for Streets and Avenues, for each and all the following purposes, viz.: — To from time to time construct, maintain, repair and operate sewers, water mains, gas mains and other mains and subways, with the appurtenances; to from time to time construct, maintain, repair and operate horse railways, steam railways and electrical railways, the latter to be operated by the trolley system or by any other system, with the appurtenances; to from time to time construct, maintain, repair and operate electrical plants for lighting or for any other purpose or purposes, by means of supports and aerial wires to be placed in any of said Streets or Avenues, or by means of electrical conductors through subways therein, or otherwise, with the appurtenances.
"And notice is hereby expressly given to any and all persons who may become, or may desire to become, by purchase or otherwise, owners of any lands abutting on any of said Streets or Avenues, or of any interest or estate in any such abutting lands, that no deed to any such abutting land, or of any interest or estate in any such abutting *Page 552 
land, is or will be intended to carry or convey, or will carry or convey, any right to, or to the exercise of, any of the franchises, easements, rights or privileges hereby reserved or intended to be reserved, in any of said Streets or Avenues, or in any part of either of them, but that every such deed is and will and shall be subject to the reservation hereabove referred to; and that no claim by any such abutting owner, or by any other person whatsoever, to have or exercise any of said reserved franchises, easements, rights or privileges, in or in any part of either of said Streets or Avenues, is or shall be available for any purpose whatsoever, unless or until such claim shall be established by a proper deed from the said Company to a grantee of the Company, granting, in clear, explicit and unmistakable terms, the franchise, easement, right or privilege particularly claimed, in addition to anything else granted by such deed or by any other deed."
Thereafter in the year 1903 and in 1904 the complainant caused a system of sewers to be constructed in certain of the streets and avenues so dedicated. This system has been called the "Canda sewer." Roughly described, the assemblage of pipes extends from Jackson Avenue along Carteret Avenue to Roosevelt Avenue (formerly known as Shore Road), with a diverting line at the intersection of Carteret Avenue and Cypress Street leading along Cypress Street into Terminal Avenue, thence along Terminal Avenue to the Kill Von Kull, with accessory projections, or laterals, along certain intersecting streets. The entire system is given a lineal measurement of about five miles, and its installation is said to have been accomplished by the complainant at a cost of approximately $150,000. It is acknowledged that the construction of the sewer was not legitimated by the sanction or approval of the appropriate municipal or state agencies.
The sales of lots during the succeeding years served progressively to populate that locality until twenty-two years later the Canda sewer seems to have become inadequate and for other reasons incapable of supplying the needs of the inhabitants and the requirements of the surface drainage. At the general election on November 3d 1925, a proposition to construct a municipal trunk sewer to be known as "Noe's Creek sewer" was indorsed by a majority of the legal voters of the borough.
A simple chronological account of the events thereafter ensuing is further enlightening. In April, 1926, an ordinance *Page 553 
was duly adopted and approved by the mayor and council of the borough authorizing the proposed improvement and appropriating for the purpose the sum of $225,000 to be raised by the issuance of bonds of the borough. The cost of the sewer was to be produced by general taxation. This ordinance was, upon notice, first subjected to a public hearing and thereafter published as required by law. Plans and specifications had of course been prepared which disclosed the intention to unite the proposed Noe's Creek sewer with the Canda sewer at certain points, notably at Cypress Street and Carteret Avenue, at Cypress Street and the easterly side of Terminal Railroad, and at Linden Street and Carteret Avenue. On June 21st, 1926, the borough clerk was instructed to advertise for bids, which were received at a meeting of the borough council held on July 19th, 1926. All of the bids were in excess of the sum appropriated. After due notice of hearing and requisite advertisement, an ordinance increasing the appropriation to $250,000 was adopted and approved on August 16th, 1926. At a meeting on August 23d 1926, the contract was awarded to the lowest bidder for the sum of $235,248.30. By such publicly reported means, the Noe's Creek sewer was proposed, and thereupon constructed with the common knowledge of the taxpayers of the borough.
Another circumstance worthy of special mention is the uncontroverted fact that before the award of the contract by the municipal authorities the complainant received a complete copy of the prints and plans designed for the proposed construction of the Noe's Creek sewer which disclosed the anticipated integration of the two sewer systems, and on August 12th, 1926, following a conference between representatives of the borough and the Canda Company, the president of the complainant company submitted, subject to the approval of the borough and the board of directors of the company, the following proposal:
"1. Canda Realty Company to grant easement for sewer purposes to Borough of Carteret, pursuant to an ordinance passed by the Borough on April 5, 1926.
"2. Canda Realty Company to turn over to Borough the sewers constructed and owned by it. *Page 554 
"3. Canda Realty Company to have right of connection with Borough sewers.
"4. Borough of Carteret to take over the streets and avenues dedicated by Canda Realty Company, as shown on its several maps, including the bridge crossing the tracks of Central Railroad of New Jersey at Carteret Avenue; Canda Realty Company to waive all restrictions now placed in dedication of said streets and avenues.
"5. Carteret Avenue to be extended by Borough from its present terminus so as to connect with Washington Avenue at a point at or near Bernard and William Streets."
Although the proposal was not accepted by the borough, its equitable significance in foro conscientiae lies in its portrayal of the initial attitude of the complainant toward the project. Indeed, at the hearing of this cause, the president of the complainant frankly confessed that he had "never paid much attention" to the connections of the two systems and had believed that the union of the sewers at the points designated would be beneficial to the efficiency of the Canda sewer. It is likewise evident that the complainant has not since then given any "attention" to its system of sewers. During the past nineteen years, the borough has been permitted to assume the exclusive supervision, maintenance, and repair of the systems so integrated.
Another occurrence to which counsel for the defendant attributes legal importance deserves mention. During the years 1932 to 1937, inclusive, the complainant became delinquent in the payment of taxes assessed against a large number of its lots. In October and December, 1939, these lots were sold for unpaid taxes, and the borough acquired the certificates of sale. On December 2d 1942, the borough instituted in this court a suit to foreclose the equity of redemption (141/299). The company filed an answer solely impugning the validity of the tax sale proceedings, but having failed to obtain a writ of certiorari
as in such event required by law, the answer was stricken. R.S.54:5-100; N.J.S.A. 54:5-100. The amount of taxes determined to be owing to the borough was $134,261.62. The company did not redeem the properties, and a final decree was entered on June 10th, 1943.
Notwithstanding that procession of events and occurrences *Page 555 
of the past, the complainant has refrained until recently from inaugurating any positive action either to enjoin or otherwise terminate the integration of the sewer systems or to recover any alleged consequential damages. Long, unaccountable, and inexcusable delay in the assertion of a private right can often support a conclusion that its continued invasion is not to be regarded as irreparable. He who is silent appears to consent.Qui tacet consentire videtur.
The bill in the present cause was filed on July 20th, 1944, eighteen years after the commission of the alleged trespass. The complainant now desires a decree (a) enjoining the defendant "from continuing its invasion and trespass on the property and property rights reserved to it in the streets" so qualifiedly dedicated; (b) directing the defendant to sever the connections between the two sewers and to restore the Canda sewer to its former independent condition; (c) requiring the defendant to compensate the complainant in damages for the consequences of the trespass; or in the alternate (d) commanding the defendant to acquire the reserved easements and the sewer system by condemnation upon payment of just compensation to the complainant.
Perhaps an analytic consideration of this case should logically begin with some study of the present existence of the basic property rights which the complainant desires this court to protect. It is observed that in dedicating the designated portions of its land for public use as streets and avenues, the complainant definitely reserved the right "To from time to time construct, maintain, repair and operate sewers * * *" therein. Such a qualified dedication may be lawfully made, and where such a reservation is withheld, the public acquires the highways cumonere. Ayres v. Pennsylvania Railroad Co., 48 N.J. Law 44;3 Atl. Rep. 885; affirmed, 50 N.J. Law 660; 14 Atl. Rep. 901;52 N.J. Law 405; 20 Atl. Rep. 54; Tallon v. Hoboken,60 N.J. Law 212; 37 Atl. Rep. 895.
The alleged property and property rights of the complainant are subjected to two incursions. Has the complainant by its long-continued course of conduct in the face of the various occurrences evinced an intention to abandon and relinquish the operation of its sewer system and the reservation of easements *Page 556 
in the streets, and has it in fact dedicated their use to the public? See 58 A.L.R. 674 et seq. Did the acquisition by the borough of the numerous lots divest the complainant of its property rights in the adjacent street? But see, on this point,City of Long Branch v. Highlands L.B. and R.B. Steamship Co.,134 N.J. Eq. 266; 35 Atl. Rep. 2d 22; Ehren Realty Co. v.Magna Charta Building and Loan Association, 120 N.J. Eq. 136;184 Atl. Rep. 203. Suffice to state that with few exceptions, legal rights are to be asserted, contested, and decided in the law forum. This is not a case for an injunction quia timet. InBrown's Mills Land Co., Inc., v. Pemberton Township, 135 N.J. Eq. 203; 37 Atl. Rep. 2d 819, I epitomized historically the intervention of Chancery in cases of trespass.
The solution of the indicated issues of law will not be undertaken, for if the proprietary rights of the complainant were for present purposes deemed to be established in the respects mentioned, it would not invert my ultimate decision in the factual circumstances of this cause. It is perceived that the distinct object of this suit is to obtain an injunction against the municipality. Where there is a right, there is a remedy, but not always by means of an injunction. Easements may be liberated from invasion by ejectment. See Wright v. Carter,27 N.J. Law 76; Burnet v. Crane, 56 N.J. Law 285, 288; 28 Atl. Rep. 591.
An injunction is an extraordinary equitable remedy utilized primarily to forbid and prevent irreparable injury. It must be administered with sound discretion and always upon the considerations of justice, equity, and morality evolved by the given case. The injury which the complainant now belatedly seeks to suppress has been tolerated by it with noticeable suavity and complacence for a period of eighteen years. Indeed, if I were here called upon to judge a competition for patient endurance, I would be inclined to award the complainant first prize and give Job honorable mention. An occasional objection or claim for some measure of compensation (as in 1939 and 1941) is not sufficient to exclude the perceptible consequences of the laches and acquiescence of the complainant in the present cause. *Page 557 
In summary, the borough pursuant to legislative authority has constructed at a substantial expense to its taxpayers, and with the passive acquiescence of the complainant, a system of sewers which it has been permitted by the complainant to operate and maintain for a period of many years in connection with the Canda sewer. To now require the borough to sever the connections between the systems would be exceedingly oppressive, if not, in existing conditions, calamitous to the inhabitants of the municipality, and comparatively of inappreciable advantage to the complainant. Such a decree would be manifestly inequitable, where a remedy is otherwise available.
The denial of injunctive relief of such an onerous character in the absence of irreparable injury is sustained by the decisions in comparable cases: Higbee Riggs v. Camden and Amboy R. andT. Co., 20 N.J. Eq. 435; Morris and Essex Railroad Co. v.Prudden, 20 N.J. Eq. 530; Easton and McMahon v. New York andLong Branch Railroad Co., 24 N.J. Eq. 49; Attorney-General v.Delaware and Bound Brook Railroad Co., 27 N.J. Eq. 1; affirmed,Id. 631; Traphagen v. Mayor and Aldermen of Jersey City,29 N.J. Eq. 206; affirmed, Id. 650; Meredith v. Sayre, 32 N.J. Eq. 557; Ballantine v. Harrison, 37 N.J. Eq. 560; Delaware,Lackawanna and Western Railroad Co. v. Breckenridge, 55 N.J. Eq. 141; 35 Atl. Rep. 756; affirmed, 55 N.J. Eq. 593;39 Atl. Rep. 1113; Marcus Sayre Co. v. Newark, 60 N.J. Eq. 361;45 Atl. Rep. 985; Simmons v. Paterson, 60 N.J. Eq. 385;45 Atl. Rep. 995; Colloty v. Stein, 80 N.J. Eq. 405; 84 Atl. Rep. 193;O'Connell v. Holton, 91 N.J. Eq. 4; 107 Atl. Rep. 37;Annotation: 58 A.L.R. 681.
The prayer of the complainant for alternative relief remains to be considered. By it the complainant seeks a decree allowing the injunction unless the defendant shall within a stated period of time proceed to acquire the property of the complainant and make such compensation to the complainant as shall be determined to be just.
I am not unaware of the recognized jurisdiction of courts of equity to protect by injunction private property from seizure for public use unless the power of eminent domain is *Page 558 
properly exercised. Morris and Essex Railroad Co. v. Prudden,supra; Delaware, Lackawanna and Western Railroad Co. v.Breckenridge, supra; Simmons v. Paterson, supra; Morris Canaland Banking Co. v. Mayor, c., Jersey City, 26 N.J. Eq. 294;Broome v. New York and New Jersey Telephone Co., 42 N.J. Eq. 141; 7 Atl. Rep. 851; Butterworth-Judson Co. v. CentralRailroad Co., 72 N.J. Eq. 568; 66 Atl. Rep. 198; Harz v. StateBoard of Commerce and Navigation, 126 N.J. Eq. 9; 7 Atl. Rep.
2d 803; affirmed, 127 N.J. Eq. 341; 12 Atl. Rep. 2d879; Pamrapsu Corp. v. Bayonne, 126 N.J. Eq. 479; 8 Atl. Rep.
2d 835; affirmed, 127 N.J. Eq. 340; 12 Atl. Rep. 2d860. I acknowledge that in such cases the principle upon which the court interferes does not rest so dependently upon the destructive and irreparable nature of the threatened or actual trespass or the inadequacy of the legal remedy as it does upon the pre-eminent obligation to support the sacred constitutional inhibition against arbitrary action of functionaries clothed with the power of eminent domain. 5 Pom. Eq. Jur. (Eq. Remedies)4257 § 1879 (§ 465); Kerr's Inj. in Eq. [*]295, 307 et seq.
The courage of judicial tribunals to safeguard constitutional rights and to prevent public authorities from using powers which the constitution has not bestowed upon them is an indispensable constituent of the art of self-government.
However, this theory of the complainant's case is likewise paralyzed by the facts. It, too, has been permitted to gather dust. The equity in that theory inheres in the constitutional or statutory right of the owner of property to be first paid. The relief is intended to be preventive and protective in its efficacy. Its purpose is to enable the vigilant owner to retain his property until after compensation is made or assured. Therefore, to successfully invoke that branch of equity jurisdiction, the complainant must act with reasonable promptness and diligence, for after the actual taking and appropriation of the property is permitted, though passively, to be completely accomplished, other modes of redress become available. Higbee Riggs v. Camden and Amboy R. and T. Co., supra. *Page 559 
It is at once noticeable that in its factual setting the present cause is diametrically different from one in which the defaulting municipality having the power of eminent domain has taken possession of land for public use with the consent of the owner and ignores the mutually contemplated payment of just compensation. Cf. Yara Engineering Corp. v. Newark, 136 N.J. Eq. 453.
In the factual circumstances present in this cause, the complainant is not equitably entitled to the prohibitory and mandatory remedies it now requests. *Page 560