PETER BALLANTINE et al., appellants,

*v.*

THE TOWN OF HARRISON, respondent.

1. A bill showing that the public authorities are about to extend a public street under a claim of title, over a wharf erected on lands in the possession of the complainant and which he claims, does not lay any ground for an injunction.

2. Where an injunction is asked on the ground of a legal right, a case of pressing necessity for the interference of equity must be shown.

*Messrs. A. Q. Keasbey & Sons,* for appellants.

*Mr. M. T. Barrett* and *Mr. J. Frank Fort,* for respondent.

The opinion of the court was delivered by

BEASLEY, C. J.

The appellants claim to be the owners of a tract of land including about four hundred and twenty feet of the east bank of the Passaic river, opposite the city of Newark. In the year 1869, they applied to the chosen freeholders for a license to build a dock in front of such lands, and having obtained the requisite authority they erected that structure, and by force of the bill which they exhibited in this case, they sought to prevent the respondent, the Town of Harrison, from extending a street over this dock down to the high-water line. It appears that such contemplated street would embrace only a part of the dock constructed by the appellants, and the bill further states that the city authorities purpose to use the part so taken as a public wharf. The answer of the respondent controverts the title of the appellants, and sets up, in addition, a paramount right to lay the street as contemplated, arising from a dedication by a former owner of the land. The bill is a pure injunction bill,

Ballantine *v.* Harrison.

and the case was heard before Vice-Chancellor Van Fleet, on final hearing upon the pleadings and proofs.

This bill seems to me to lack all semblance of equitable substance.

On the admission that the appellants are the owners of the premises, as they assert, and that the respondent intends to do everything that is laid to its charge, an injunction is not, upon familiar principle, the remedy apt to the occasion. The gravamen of the complaint is made up out of an ordinary trespass. The question whether the respondent has the right to run the street in dispute to the water line, is one purely of law, and is entirely unconnected with any matter of equitable cognizance, so that the only possible ground on which an injunction could be demanded, would be that the act threatened to be done would result in injurious consequences that could not be reasonably recompensed in damages. When an injunction is asked for as auxiliary to the maintenance of a legal, in contradistinction to an equitable right, the rule is entirely settled that such preventive process will never be issued except to preclude irreparable damages. Legal rights are to be asserted and decided in the legal forum, and until so established, a court of equity will not interfere except in case of absolute necessity. And even when such intervention occurs, equity will not take to itself jurisdiction over the legalities of the controversy, but will content itself with conserving the subject of dispute, pending the litigation at law, and will sometimes (and it appears to me that such is the proper course) grant its aid on the condition that the matter in controversy be put promptly for investigation before a legal tribunal. This was the measure taken by Lord Cottenham in the case of *Hilton* v. *Earl of Granville, 1 Cr. & Ph. 284,* in which the question involved was, whether the defendant had the right to so work his mine as to jeopard the house of the complainant; the course adopted being a refusal of a preliminary injunction, but a retention of the bill accompanied with a requisition that the parties should put the matter, at the earliest possible time, before a court of law.

It will be observed that unless the imminence of irreparable

36

damage be the test of the right of equitable cognizance over cases which involve simply legal rights, the result must be that such cognizance exists in every case of a continual invasion of the land of another. If a tortious taking and holding of real property lay the ground for such jurisdiction, then necessarily the equitable and the legal power to take such matters in charge is concurrent. Such a doctrine is unknown to the law; and the opposite doctrine is that which has always, in theory, at all events, been maintained in this state. No case can be found in the volumes of our reports that purports to hold that the mere taking possession of lands and holding them *vi et armis*, will form a basis for the arrest of the doing of such wrong by the arm of equity. All the authorities cited in the brief of counsel from our own reports, with the exception of such as involve the act of railroad and similar corporations entering without right on lands owned by other persons, and which class rest upon a well-known principle peculiar to themselves, repudiate such a right of equitable jurisdiction. In both the cases cited of *Southmayd* v. *McLaughlin, 9 C. E. Gr. 181,* and *Johnston* v. *Hyde, 10 C. E. Gr. 454,* the court expressly declares that its action is based on the ground of threatened irreparable injury. As the *ratio decidendi* is the only matter of importance in estimating a precedent, it is of no consequence whether the rule in question was properly applicable to the facts presented in the cases referred to. Nor does the decision in *Kerlin* v. *West, 3 Gr. Ch. 449,* rest on a different ground. Gentlemen of the profession whose experience has a sufficient reach into the past, will remember what a struggle it was for the bar and the courts to find any standing ground on which to sustain an equitable power to prevent the waste and spoliation of large tracts of pine lands by pretended claimants. The result was that equity did assume the authority, as appears from the case just quoted, and such assumption was justified for the reason that the timber standing on such land constituted almost its entire value, and consequently its destruction filled up the measure of irreparable damage.

With respect to the citations from the New York and English reports, I have read them with care, and do not find that any

Ballantine *v.* Harrison.

one of them contains any doctrine adverse to the view already declared. The authority that seems to me to come the nearest to being an exceptive case is that of *Goodson* v. *Richardson, L. R. (9 Ch. App.) 221,* in which a mandatory injunction was granted, directing the defendant to remove water pipes which he had laid under the surface of the soil of the complainant's land. But the circumstances were peculiar in this feature, that the pipes in question were laid in the bed of a public road, so that, as the court said, it was doubtful whether the complainant could remove them without subjecting himself to a liability to indictment. Unless this particularity will constitute a proper discrimination, the decision cannot be brought into harmony with the current of authorities.

In the case before the court, as I have said, there is nothing shown to vary it from an ordinary tortious taking of lands. It is not pretended that the city authorities have any intention to destroy the wharf put upon the premises by the complainants; on the contrary, it is averred that they intend to use it as a wharf for the public; nor are any facts stated evincing that any business of the complainants, connected with, or dependent on this wharf, will be interfered with by the extension of this street in the manner proposed. Such a case is, in my opinion, in no sense an equitable one, and on this account I shall vote to affirm the decree appealed from.

*Decree unanimously affirmed.*