Todd v. Staats.

---

MERIBAH TODD et al., complainants and appellants,

v.

WILLIAM S. STAATS, defendant and respondent.

[Filed June 18th, 1900.]

1. When the fundamental right, on which the complainant prays equitable relief, is the legal title to an easement in lands of the defendant, and that right is in substantial dispute, the establishment of the right at law is necessary to justify the interference of a court of equity.

2. If the complainant's bill prays affirmative relief, based on the existence of such a right, and the right is denied by the answer, it is proper for the court of chancery to retain the cause until the complainant has had reasonable opportunity to establish his title at law.

---

On appeal from an order advised by Vice-Chancellor Stevens, who delivered the following opinion:

The complainants ask that defendant be enjoined from erecting the wall of his new building in what they claim to be an alley appurtenant to their property.

In the year 1835, Andrew A. Ten Eyck, being the owner of an unimproved lot of land in Somerville, having a frontage of sixty feet on the New Jersey turnpike, conveyed the westerly half of it to one Todd. In doing so he covenanted to leave open six feet of land on the east of the division line of the lots as divided; and Todd covenanted to leave open four feet on the west side of the division line "for the purpose of a road to the rear of said

lots." Mercy Toms became the owner of one of these lots in 1839 and of the other in 1843, and by this unity of seizin the way became extinct. In the last-mentioned year the situation appears to have been this: Houses had been erected on each part, but no barns. Fences had been put up *near* the lines of the way as defined by the deed from Ten Eyck to Todd, but not corresponding with them. The northeast corner of the house on the Todd lot (now the defendant's) was considerably within the line of the way.

By her will made in March and probated in August, 1854, Mercy Toms gave and devised to her daughter, Meribah, "the dwelling-house, lot of land and premises whereon I now live, to hold, use, occupy, possess and enjoy the same" for her life, with remainder to, her children. The land devised is admitted to have been the easterly part of the original lot. The testatrix authorized her executors to sell the rest of her real estate. Acting on the power, they sold the westerly part of the original lot to one Conklin, who conveyed to Merz, who conveyed to the defendant, but instead of subjecting four feet of it to the easement of a way, as had been done by Ten Eyck, they conveyed it unreservedly by metes and bounds, and then added the following clause: "with the right and use of the lane between this and the lot of the said Mrs. Augustus F. Todd." This was not a reservation of a right by the grantors in the land conveyed, but an added grant of the use of a lane to the grantee. The Mrs. Augustus F. Todd referred to was the Meribah to whom Mercy Toms had devised it. The same clause in reference to the use of the lane appears in the subsequent deeds, including that under which defendant holds title.

On this state of facts the complainants contend—

*First.* That the words "the dwelling-house, lot of land, and premises whereon I now live," created by implication a right of way in the lane as it was, then bounded by the houses and fences.

*Second.* That if it did not, the complainants have become entitled to the enjoyment of such right by adverse user for over twenty years.

I think both contentions are untenable.

Todd v. Staats.

The first is clearly so under the case of *Fetters* v. *Humphreys, 4 C. E. Gr. 472.* That case presented much stronger grounds for relief than this, for there it was shown that the way had been used by testator in his lifetime, and that the user was necessary for the comfortable enjoyment of the property in the condition in which he had left it. Here it is not shown that Mercy Toms used the way for any purpose whatever.

As to the second contention. The evidence fails to satisfy me that a right of way has been acquired by adverse user. There is considerable evidence going to show that the lane was used by the grantor of the defendant for the purposes of a passageway to his stable after he had built it. But use by the defendant or his grantor cannot help the complainants. It would indeed be extraordinary if A could claim a right of way over land of B because B had himself made use of it as a way. The user, which gives a title, must be that of A and not of B. Now we find, on examining the evidence, that it refers almost altogether to user by defendant's grantor. The complainants themselves did not use it all. Their successive tenants, not parties to this suit, did indeed use some undefined part of it for the purpose of carting ashes and coal, but only occasionally and in succession. There is no evidence whatever that the *locus in quo,* which is a narrow strip, at its widest point only three feet two inches wide, was essential to this particular use, and there is no evidence of any value going to show that even a succession of tenants used it for any purpose whatever for a continuous and uninterrupted period extending back twenty years.

Without reference, therefore, to the inequitable attitude of the life tenant, Meribah, who, as one of the executors of Mercy Toms, in her deed to the defendant's predecessor in the title, declared that the alleyway or lane was *between* the lot which she was conveying and the lot devised to her, I think that complainants have failed to show a title to relief. I ought to add, perhaps, that I have discussed the case as it appears on the proofs. The bill rests principally upon the idea that the original way created by Ten Eyck in 1835 is still, in legal contemplation, existent, an idea plainly erroneous by reason of the subsequent union of the title to both lots in the same owner.

Todd *v.* Staats.

DIXON, J. This bill of complaint was filed to restrain the defendant from erecting a building upon the westerly portion of a strip of land ten feet wide which, the complainants contend, is a lane between their lot on the east and the defendant's lot on the west, for the common use of both properties, and to compel the defendant to fill up an excavation which he had made thereon. The defendant by his answer denies that the complainants have any right of way over the land where he is building, and also denies that what he is doing will cause any irreparable injury to the complainants. On these pleadings the parties took proofs and went to final hearing before Vice-Chancellor Stevens, who concluded that the complainants had failed to establish their claim to the right of way, and thereupon the bill was dismissed.

The evidence produced at the hearing tends to prove that before the year 1835 Andrew A. Ten Eyck owned the property now belonging to both parties, which consisted of a tract about sixty-six feet wide and two hundred and fifty-three feet deep; that by deed dated July 21st, 1835, he conveyed to James W. Todd the westerly part, having a width of about thirty feet, which deed contained the following clause:

"And the said Andrew A. Ten Eyck binds himself, his heirs, executors and administrators to leave open six feet of land on the east side of the said line of the said Todd and Ten Eyck, for the purpose of a road to the rear of said lots forever, and the said Todd binds himself, his heirs, executors and administrators to leave open four feet on the west side of the said line of the said Todd and Ten Eyck for the said purpose of a road to the rear of said lots;"

that in execution of the obligation thus expressed, fences were erected along the sides of the ten-feet strip thus opened; that by deed dated March 17th, 1836, Todd conveyed his lot to Stephen H. Rowen, which deed contained the following clause:

"Together with the right and privilege of a lane ten feet, that is, six feet to be given by Andrew A. Ten Eyck, and four feet by said Todd, in the line between the lot of said Ten Eyck and the one hereby conveyed to be used in common as a lane or way to the rear of said lots by the owners thereof, their and each of their heirs and assigns forever;"

Todd *v.* Staats.

that by deed dated May 9th, 1837, Rowen conveyed his lot to Andrew A. Ten Eyck, which deed contained the following clause: "Together with the right of a lane of ten feet between this and the lot of Andrew A. Ten Eyck, Esq.;" that Ten Eyck being thus again the owner of the entire property, conveyed to Runyon Toms, by deed dated March 9th, 1839, the same property that he had on July 21st, 1835, conveyed to Todd, which deed contained the following clause: "With the right and use of the lane between this and lot of said A. A. Ten Eyck;" that by deed dated April 1st, 1839, Ten Eyck conveyed to Mercy Toms all the property except that which he had conveyed to Todd in 1835, and had again conveyed to Runyon Toms in 1839, which deed contained the following clause:

"And also excepting and reserving to the said Runyon Toms, his heirs and assigns forever, the use and privilege of six feet off the west side of this lot, in common with four feet of the east side of his lot from front to rear of land;"

that by deed dated April 15th, 1843, Runyon Toms conveyed his lot to Mercy Toms, which deed contained the following clause: "With the right and the use of the lane between this and the lot of the said Mercy Toms;" that Mercy Toms thus being seized of the entire property, resided on the part conveyed to her by Ten Eyck, until she died in 1854; that by her will she devised to her daughter, Meribah, one of the complainants,

"the dwelling-house, lot of land and premises whereupon I now live, to have and to hold, use, occupy, possess and enjoy the same, for and during the term and period of her natural life,"

with remainder in fee to her children, who are the other complainants, and the residue of her real estate she authorized her executors to sell, naming her daughter, Meribah, and her friend Abram Runyon as executors; that by deed dated April 2d, 1855, the executors, in pursuance of the power and authority given by the will, conveyed to William Conklin the westerly lot, thirty feet wide, above mentioned, which deed contained the following clause:

"With the right and use of the lane between this and the lot of the said Mercy Toms, being the same premises conveyed to the said Runyon Toms by Andrew A. Ten Eyck, by deed dated March ninth, eighteen hundred and thirty-nine, and recorded in Somerset county clerk's office in Book V of Deeds, page 296, and by Runyon Toms and wife, conveyed to the said Mercy Toms, in her lifetime, by deed dated April fifteenth, eighteen hundred and forty-three;"

that by deed dated March 8th, 1861, Conklin conveyed his lot to John H. Merz, which deed contained the following clause: "With the right and use of the lane between this and the lot of the said Mrs. Augustus F. Todd;" that by deed dated May 1st, 1894, Merz conveyed his lot to the defendant, which deed contained the same clause as the last; that since the fences were first erected on the sides of the ten-feet strip in 1835, its lines have usually been defined either by fences or by buildings, and that at least since 1861, when Merz purchased, the strip has been used to some extent as a passageway by the owners and occupants of both lots.

Mr. John A. Frech and Mr. Richard V. Lindabury, for the complainants, appellants.

Mr. Alvah A. Clark, for the defendant, respondent.

The opinion of the court was delivered by

DIXON, J.

The deed made in 1835 by Ten Eyck to Todd created an easement against each party in favor of the other, with regard to so much of the ten-feet strip as was owned by each. By the subsequent union of title to both the lots in Ten Eyck, that easement became legally merged in his absolute ownership. But, on his conveyance of the westerly lot to Runyon Toms in 1839, the question is presented whether the proper construction of the deed did not create the easement anew by the reference to the Todd deed of 1835, or did not revive the former easement, according to the suggestion made in Thomson v. Waterlow, L. R. 6 Eq. 36, that there is a substantial distinction in this respect between a pre-existing right of way which has become

legally merged by passing to the owner of the servient tenement, and a way which an owner has opened over his own property for his own use.

If by either means the easement came into being, it was merged by the union of both titles in Mercy Toms. But at her death the titles were again separated, and questions like those above stated arise again. The form of her devise of the easterly lot and premises to the complainants also justifies an inquiry whether they did not thereby obtain a right to use and enjoy the ten-feet strip as a way, on the principle applied in *Stanford* v. *Lyon, 8 Vr. 426,* and it may likewise be questionable whether the deed made by the executors of Mercy Toms for the westerly lot, and the subsequent deeds down to the defendant, did not convey so much of that lot as lay within the ten-feet strip, subject to its use as part of the lane between the lots.

Even if none of the muniments of title supports the complainants' claim, the further question is raised, whether the evidence does not establish a right of way in their favor by adverse user.

Every question thus suggested lacks any element of an equitable nature, and is proper to be determined by the courts of law. The right which the determination of any of these questions in favor of the complainants will establish, is fundamental to the relief which they pray from the court of equity, and until that right is settled at law, the aid of the court of equity cannot properly be invoked. For this reason we think the court of chancery erred in attempting to decide whether the complainants really possessed the right of way which they claimed in their bill. In view of the fact that the answer did not deny the jurisdiction of the court, and that one object of the bill is to secure affirmative relief in the form of a mandatory injunction for the restoration of the way to a passable condition, the proper course for the chancellor was, not to dismiss the bill, but to retain it until the complainants had had reasonable opportunity to establish their title at law. *Outcalt* v. *George W. Helme Co., 15 Stew. Eq. 665, 676.*

The complainants do not show that, if even they have the right claimed, the defendant's interference with it will cause

them irreparable injury, and therefore no injunction should issue pending the necessary litigation. The defendant being fully apprised of the situation, will proceed with his building at his peril.

The decree dismissing the bill should be reversed, on the ground and for the purpose above indicated.

*For reversal*—THE CHANCELLOR, CHIEF-JUSTICE, DIXON, GARRISON, GUMMERE, LUDLOW, COLLINS, BOGERT, HENDRICKSON, ADAMS, VREDENBURGH, VOORHEES—12.

*For affirmance*—VAN SYCKEL, LIPPINCOTT—2.