MAYOR, &c., OF THE BOROUGH OF SOUTH AMBOY et al.

*v.*

PENNSYLVANIA RAILROAD COMPANY et al.

[Argued March 22d, 1910.   Decided June 20th, 1910.]

1. Section 29 (*P. L. 1903 p. 660*), providing that where any railroad company shall not properly construct crossings of highways as required by law, the municipality where the crossings are located may proceed by a suit in equity to compel specific performance of the duties imposed by law on the company, is not applicable to a case where the fact of an alleged encroachment upon the highway by the railroad company averred in the bill, is in doubt and substantial dispute under the evidence, or has not been settled at law, and confers no jurisdiction upon a court of equity to try such a controversy.

2. Nor can the bill be sustained as one for the abatement of a public nuisance by injunction, where there is no averment in it of irreparable damage, and the evidence shows a substantial dispute as to the fact of the nuisance upon which the bill is founded, and the question is in doubt, or has not been determined at law.

On appeal from a decree of the court of chancery advised by Vice-Chancellor Stevenson, whose opinion is reported in *76 N. J. Eq. (6 Buch.) 57.*

Mr. *Frederic M. Pearse* and Mr. *George S. Silzer,* for the borough of South Amboy and others, complainants.

Mr. *Alan H. Strong,* for the Pennsylvania Railroad Company and others, defendants.

The opinion of the court was delivered by

VREDENBURGH, J.

The complainants have set in motion the present statutory proceeding by filing their bill of complaint in equity, framed under the twenty-ninth section of the General Railroad law of this state. *P. L. 1903 p. 660.*

The principal object of the suit (as must conclusively be inferred from the terms of the decree in their favor brought up for review) is to compel the widening of the public highway as it now exists in the borough of South Amboy, New Jersey (known as Ridgeway or Stevens avenue), at a point in it called in the petition attached to the bill, "The Hole in the Wall," to its alleged legal width. The decree appealed from, if enforced according to its terms, will eject the defendants from the possession of a parcel of land at least nineteen feet in width and of an undefined length, which has been, admittedly, in their exclusive and peaceable occupation for more than sixty years last past. The questions involved in this appeal, therefore, are of importance both in fact and in principle.

In the year of 1832, in the earliest days of railroad building both in this country and the world, the Camden and Amboy Railroad Company first built its railroad, and laid down the rails of its tracks at the place in controversy. They built it across an old road, or driftway, which has since grown into Ridgeway avenue. This old road, in 1832, was merely a single track wagon way, used by the public in driving their horses and wagons over the railroad track, and remained of the same width and condition until the year 1857—a period of twenty-five years—when the defendants, acting, doubtlessly, for their own interests, as well as for those of the public, widened its limits by constructing, at right angles with the road, two stone wall abutments, fourteen feet apart, and then elevating and placing their railroad tracks upon the top of the abutment walls sufficiently high and wide above the wagon road to permit the passage of carriages, horses and cattle over it, and under the railroad, in conformity to law and charter provisions. The effect of this change of 1857 was to widen the highway there from a single wagon track crossing at grade of about seven feet in width to an undergrade crossing of fourteen feet in width. The devotion in 1857 by the defendants of this increased width of land for the purposes of the crossing, must be presumed, as against them, to have been a dedication by them of their land to and for the use of the public. It has remained unchanged ever since and up to the time of the entry of the decree below.

No recorded or other return in writing of the laying out of the old road, nor any applicable to it, appears in the evidence, but the bill of complaint avers that this Ridgeway avenue or highway was originally laid out to a width of fifty feet, and charges that the abutments encroach upon the highway, and asks that they be changed to the proper line of the street, and the roadway between them be widened accordingly. Its specific prayer for mandatory injunction (which I deem important to transcribe here) is that

"the Pennsylvania Railroad Company and the United New Jersey and Canal Company may answer the premises, and may be compelled specifically to perform the duties imposed by law upon them, or either of them, with respect to the construction, maintenance and repair of the crossing of Ridgeway avenue, or Stevens avenue, in the borough of South Amboy by their tracks, and that your honor will prescribe the crossing to be reconstructed and the repairs to be made, and that they may be required to remove the abutments placed by them within the lines of the highway aforesaid, and to properly improve said highway to the full width thereof and make the necessary provision for the carrying away of surface water and drainage and sand soil now washed upon said highway beneath said tracks,"

concluding with the usual prayer for other and further relief.

After hearing the evidence the learned vice-chancellor, without finding or determining, in express terms, that the highway at the crossing had been narrowed or encroached upon by the defendant, has, in effect, by the decree advised by him, so determined, as will presently appear. The terms of the injunction decree, in respect to the matters we are now interested in, adjudge and command "that the defendants shall, within six months from its entry, separate the walls now constructed under the tracks of the defendant companies at the place set forth and described in the bill of complaint in this cause so as to leave thirty-three feet in the clear between said walls, said width being deemed by the court at this time adequate for public travel on said highway. Provided, however, that the defendants shall have the right to erect supports or columns through said passageway to occupy at the base thereof a space not greater than two feet in width, and to so erect the same as that there shall be a roadway of not less than twelve and one-half feet on the north-

erly side of said passageway, and a roadway of not less than twelve and one-half feet and a sidewalk of six feet on the southerly side of said passageway, said sidewalk to be constructed immediately adjacent to the southerly wall of said passageway."

It will be seen, at a glance, that this decree is the equivalent of a judgment in ejectment at law, and will, if enforced, oust the defendants from the possession of their land, as effectually as if a writ of possession had issued from a court of law.

It is important to observe at this point that there is no averment in the bill of complaint that any specific number of feet, or quantity of land, of the highway had been, previous to the filing of the bill, taken or appropriated by the defendants, nor does the prayer of the bill give any notice to the defendants that a decree and judgment of the court of chancery awarding the possession of any land to the complainants was asked for. The absence from the bill of complaint (in this peculiar statutory proceeding in equity) of any demand of possession of a defined quantity of land, as compared with the certainty of such demand of possession required in proceedings at law, gives rise to the suggestion of the jurisdictional difficulty encountered, and hereinafter to be considered.

The defendants, by their answer filed in the cause, deny the jurisdiction of the court below in the premises, and insist that the complainants have a full, complete and adequate remedy at law; that the lawful width of the highway can only be determined in an action at law. At the hearing before the vice-chancellor the questions of fact presented by the complainants' evidence related mainly to the claimed encroachment by the defendants upon the old highway since the year 1857 up to the filing of the bill.

As has already been stated above, there was no evidence that the old road was ever laid out as a public road, or that its courses or limits were ever fixed or designated by any map or return, or writing whatever. Nor was there any proof in the case of the existence of fences, or other visible monuments, defining either the lines or the limits of Ridgeway avenue at this crossing at any time. There was a mass of testimony, given by old witnesses from personal recollection, as to the user by the public.

by wagons and otherwise, of the highway since the year of 1857. While evidence of this character was apparently sufficient to influence the learned vice-chancellor to conclude that the minimum lawful width of the avenue at the *locus in quo* was thirty-three feet, yet it seems to us that such evidence was too indefinite and uncertain to furnish foundation for the decree appealed from. We are of the opinion, moreover, that the proper forum for settling the width of the highway is a court of law, and the proper tribunal for its correct determination is a trial by jury. Where such a fundamental question is in dispute we think the twenty-ninth section of the General Railroad law has no application. We agree with the opinion below in its statements to the effect that the bill of complaint is not one to have a nuisance in a public highway abated by injunction, nor one to have conflicting easements regulated, but must be regarded as invoking *only* the jurisdiction conferred upon the court of chancery by section 29.

There is, however, another reason, not adverted to in the opinion below, why, under the facts in controversy in this case, the bill cannot be sustained as one for the abatement of a public nuisance by injunction. The bill does not aver irreparable damage, nor is such claim made under the evidence. Professor Pomeroy, in his work upon *Equitable Remedies* (*vol. 1 § 542*), after stating that the same principle must govern the question as to the interference of the court, whether the case be one of public or private nuisance, and that the principle by which the court ought to be governed is "whether the extent of the damage and injury be such that the law will not afford an adequate remedy," adds: "If there is a substantial dispute as to *fact* or law, and the question is in *doubt,* a trial at law will be required before equity will intervene."

In the case of *Attorney-General* v. *Heishon, 18 N. J. Eq. (3 C. E. Gr.) 412,* it is said, in the opinion of Chancellor Zabriskie (after stating that the court of chancery has power to cause nuisances to be removed and abated, both public and private), "that it will *only* exercise that power when the fact of nuisance is beyond doubt, or has been settled by a verdict at law," citing cases at page 413. In the *Heishon Case,* as in the case at bar, the controversy was over a question of an encroachment of de-

fendant's erection upon a public street, but there was no record or survey of the laying of the street, and no proof of its width, and it was held that the facts in dispute should be determined by a jury, and that if the bill was retained an issue should be directed to try the question by jury whether Heishon's building extended beyond the true line of the street. In the case in hand the width of Ridgeway avenue at the crossing was not established by any record or survey of the laying out of the highway, but the facts respecting the width were in sharp dispute and grave doubt under the evidence.

The learned vice-chancellor, after saying in his opinion that the court had to deal with the highway as it existed by user or presumed dedication when the railroad tracks were constructed over it, and after a very able and earnest effort to reconcile the mass of testimony before him respecting its lawful width at the crossing, arrived at the conclusion, from the weight of the testimony, that it was at least two rods in width. That he was in much doubt about the fundamental fact of the true width is evident from a reading of his opinion.

A few of the many cases in this state supporting the principle declared above by Pomeroy and in the case of *Attorney-General* v. *Heishon, supra,* are: *Carlisle* v. *Cooper,* 21 *N. J. Eq.* (6 *C. E. Gr.*) 576; *Attorney-General* v. *Brown,* 24 *N. J. Eq.* (9 *C. E. Gr.*) 89; *Outcalt* v. *George W. Helme Co.,* 42 *N. J. Eq.* (15 *Stew.*) 665; *Todd* v. *Staats,* 60 *N. J. Eq.* (15 *Dick.*) 507.

From what has preceded it follows that the jurisdictional validity of the decree below must depend entirely upon the terms of section 29. It reads:

"When any company shall not properly construct and maintain the bridges or other crossings of highways by its railroad tracks as required by law, it shall be lawful for the governing body of the township or municipality wherein such crossings are located, within a reasonable time, after notice to the company, to construct or repair such bridges or other crossings, and the cost thereof may be collected from the company, whose duty it is to make such construction or repair, by action in any court of competent jurisdiction; or in lieu of such construction or repair the township or municipality may proceed by a suit in equity to compel the specific performance of the duties imposed by law upon such company with respect to the construction, maintenance and repair of such bridges and crossings, and the court shall prescribe the crossing to be constructed

or the repairs to be made; and in order to enforce obedience to its decree or mandate, the court may restrain the exercise of any of the franchises of the company or adopt such other remedies as may be in accordance with the practice of the court."

Does this statute confer upon a court of equity authority to try and determine the question of encroachment by a railroad upon a public highway in cases where its width is in doubt or dispute or has not been settled at law?

The case of *Metuchen* v. *Pennsylvania Railroad Co.,* recently decided in this court and reported in *73 N. J. Eq. (3 Buch.) 359,* and in the court of chancery in *71 N. J. Eq. (1 Buch.) 404,* does not assist us in the decision of the point in which we are now interested. In that case the jurisdictional force of the twenty-ninth section was construed, but not in regard to the feature now in question. Vice-Chancellor Pitney, with characteristic acumen, held (*71 N. J. Eq. (1 Buch.) 404,* and this court subsequently in *73 N. J. Eq. (3 Buch.) 359,* affirmed his holding for the reasons given by him) against the defendant's contention, which was, that the legislature had no power to confer on the court of chancery the right to give to a municipality "compulsory remedy by way of compelling specific performance by a railroad company of its duties in this behalf as contradistinguished from its power to give it a preventive remedy;" but the context of his opinion shows that he was then only concerned with the question of such power so far forth as it rested upon the ground of the specific performance of contractual duties owed by the railroad companies to the state, and he went on to say that section 29 "merely provides for the compelling of the specific performance of a duty resting upon the railway by virtue of its original contract with the state," * * * and that it seemed to him that the jurisdiction given by that section "is cognate to the familiar jurisdiction of the court to compel the specific performance of contracts." This ground, it is plain, can have no application to the case, *sub judice.* The defendants here cannot be said to have been under any contract with the state to surrender to it, for its use, their private rights of possession in their own lands. The distinction between the cases will further clearly appear when we notice that in the

*Metuchen Case,* the width of Main street, in Metuchen, which was sought to be widened by the complaining borough, was not disputed by the railroad. Its width and limits at the crossing of Main street were precisely defined of record and not controverted; nor was there room for any controversy as to its lawful width. The reverse is true in the present case. I think that no other decision of our courts construing this section upon the point before us can be found, and I conclude that the question now raised must be regarded as one of first impression in this court.

It will be conceded that this statute does not, in express terms, confer upon the court of chancery authority to try or determine the fact of encroachment upon a highway by the railroad companies, asserted and assumed in the proceedings and decree before us, and I think the court will be slow to imply from those terms a legislative design to deprive the courts of law of any part of their ancient and exclusive jurisdiction to try such questions according to the course of the common law.

One of the cardinal rules of statutory construction is to regard the effect and consequence of the law. A long array of authority has denied to courts of equity the right to entertain suits where there is a substantial dispute over the title to land, or over legal estates of easement in lands—a right which has hitherto remained within the exclusive cognizance of the courts of law of this state.

The number and uniformity of these adjudications are such that an intent on the part of the legislature to create so important a change and transfer of jurisdiction from law to equity, as was attributed to this act, by the court below, seems to us to be unwarranted by its language and clearly untenable. It should be added, lest the point might be thought to have been overlooked by this court, that if the purpose of the statute had been to confer such authority upon a court of equity, it would have been constitutionally invalid under the doctrine of *Jersey City* v. *Lembeck, 31 N. J. Eq.* (*4 Stew.*) *255,* and the cases which have followed it. It is a familiar rule of the construction of statutes that the court will not declare void an act of the legisla-

ture for unconstitutionality when a construction can be given to it which will not have that effect.

Referring to some of these authorities, upon the question of equity cognizance, it will be seen that in *Todd* v. *Staats, 60 N. J. Eq.* (*15 Dick.*) *507*, this court held that "when the fundamental right, on which the complainant prays equitable relief is the legal title to an easement in lands of the defendant, and that right is in substantial dispute, the establishment of the right at law is necessary to justify the interference of a court of equity."

In the leading case of *Hart* v. *Leonard, 42 N. J. Eq.* (*15 Stew.*) *416*, it was held by this court that "a substantial dispute over a private legal right in land is not ordinarily cognizable in a court of equity." In that case the bill averred that the complainant was the owner of a lot of land, and that he and his predecessors in title had, by adverse user for over twenty years, acquired a right of way across the lands of the defendant from a certain public road to said lot; that the defendant obstructed said way, and the bill prayed a decree that the complainant was entitled to the way, and a mandatory injunction commanding the defendant to remove the obstruction and allow the defendant to pass through. This court, in its opinion delivered by the late Mr. Justice Dixon, said: "From the foregoing statement it appears that the claim set up a purely legal interest in lands, resting upon a purely legal basis. Before attempting to determine the validity of the claim, it is proper to consider whether the question presented comes within the cognizance of a court of equity." After classifying the cases in which courts of equity may, by decree and injunction, protect and enforce legal rights in lands, the opinion declared that the case did not come within any of those classes, because the evidence showed "a substantial dispute over the fact of adverse user which the defendant is entitled to have settled by the verdict of a jury."

In a later case, affirmed by this court on appeal, of *Delaware, Lackawanna and Western Railroad Co.* v. *Breckenridge, 55 N. J. Eq.* (*10 Dick.*) *141, 593*, it was held that "a court of equity is without jurisdiction of an action to enjoin a continued trespass in lands by the maintenance across them of pipes laid under the

surface, where the right to relief depends on the question of the complainants being the owner of the legal title to the land, which has not been determined by a court of law, the trespass being one not involving irreparable injury, and one for which an action in ejectment affords full and complete relief."

In *Millville Gas Light Co.* v. *Vineland Company,* 72 *N. J. Eq.* (*2 Buch.*) *309*, it is declared that "where the basis of a bill in equity is the refusal of defendant to yield to complainant the enjoyment of his legal estate in lands, and the title of complainant is in dispute, it is well settled that equity will not entertain jurisdiction until the title is first established at law." See, also, *Palmer* v. *Sinnickson,* 59 *N. J. Eq.* (*14 Dick.*) *530*, and the cases cited, *supra,* on page 247 of this opinion, and *Ballantine* v. *Harrison,* 35 *N. J. Eq.* (*10 Stew.*) *560, 561,* where Chief-Justice Beasley's opinion, in this court, declares that "when an injunction is asked for as auxiliary to the maintenance of a legal, in contradistinction to an equitable right, the rule is entirely settled that such preventive process will never be issued except to preclude irreparable damages," \* \* \* and "even when such intervention occurs, equity will not take to itself jurisdiction over the legalities of the controversy, but will content itself with conserving the subject of dispute, pending the litigation at law," &c.

For the reasons given, I think the decree below should be reversed.

*For affirmance*—None.

*For reversal*—The Chief-Justice, Garrison, Swayze, Trenchard, Bergen, Voorhees, Minturn, Bogert, Vredenburgh, Vroom, Gray, Dill, Congdon—13.