Complainant asserts a right of way from land which he owns, over land of the defendants, to West Center Street, Woodbury. The reservation of a right of way by deed is admitted; the present existence and the past and present location of the right of way are disputed. In the original conveyance the width of the right of way was fixed at ten feet but its exact location was not defined, nor has it been defined in subsequent conveyances.
The lands of both the complainant and the defendants were owned by Jeptha Abbott in 1873. On March 25th of that year he conveyed the portion now owned by complainant to Samuel H. Kirby. The deed, inter alia, provided: "Together with ingress and egress to a lane or passageway of 10 feet wide from Church Street [now West Center Street] through lands of said Abbott to the above described premises." Complainant purchased his lot on July 5th, 1929, and the deed of conveyance to him contained the same provision. Defendants purchased their lot on March 21st, 1913; their deed recited the original ownership of Jeptha Abbott and contained this reservation:
"Reserving the right of ingress and egress over a lane or passageway of the width of ten feet, leading from West Center Street through the lands hereby conveyed to the lands of Hattie P. Kirby, as provided for in deed from Jeptha Abbott and wife to Samuel H. Kirby, dated March 25, 1873."
The lands here involved are in an improved section of the city. The lot of complainant fronts on South Broad Street, is now vacant land, and has been leased and is in use as an automobile parking lot. In addition to the approach from South Broad Street, the tenants have privately contracted for the use of a driveway at the rear of the lot. Defendants' lot is at the corner of South Broad Street and West Center Street, is 24.38 feet in width and extends along West Center *Page 497 
Street 225 feet in depth. Five buildings are located on this lot; at the extreme rear is a new cement block garage 13.42 feet in width; then an old one-story cement block building, 19.35 feet in width; then a recently erected one-story cement block building 13.97 feet in width (claimed to obstruct the right of way); then an old one-story frame shed 16.19 feet in width. At the corner of South Broad Street and West Center Street is an old two-story brick dwelling and store; this main building extends 56.41 feet in depth along West Center Street and, between it and the old frame shed, there is a yard 56.66 feet in depth.
Complainant, in his bill, did not attempt to definitely fix the location of the 10 foot right of way. The bill does state that, on or about August 4th, 1941, defendants started to erect a building on the right of way and that such building, when erected, would completely block it and prevent its use in connection with complainant's property.
Complainant produced a witness who testified that Mr. Kirby, during his occupancy of the land which is now owned by complainant, conducted a business thereon and habitually drove to and from that property over a then distinguishable driveway running beside an old barn. The witness described the barn as of about 30 feet in width and located at the very rear of the lot now owned by defendants. The present cement block garage and adjoining one-story cement block building, the witness said, more or less occupy the space where the old barn stood. However, these buildings together occupy more space than the old barn by 2.77 feet. The old one-story frame shed, still standing, was in existence when the barn stood on the lot. It was the testimony of this witness that the driveway used by Mr. Kirby ran beside the barn or over the open ground between the barn and the old shed. Complainant testified that, at the time he purchased his land, clearly defined tracks indicated the location and existence of a previously used driveway running from that land to West Center Street and over this open space.
Defendants, in their answer, admit the several conveyances with reservations and covenants touching the right of way. However, they deny that any right of way has been continually *Page 498 
open and in use from March 25th, 1873, until August 4th, 1941, as is alleged by the complainant, and deny that the building they began erecting on August 4th, 1941, blocks the right of way and prevents its use in connection with complainant's property. It was the testimony and the contention, on behalf of the defendants, that at the time they purchased their land there was no evidence of a fixed and existing passageway from complainants' property to West Center Street; that there was no user of a driveway by or for the owner or occupants of the adjoining property from March 21st, 1913, when defendants purchased their property, until after the purchase by complainant of his property, July 5th, 1929, and the subsequent establishment of the lunch car; that, after the establishment of the lunch car, patrons began to drive to and from complainant's property over defendants' lands; that the use of the open portions of their lands was promiscuous; that, in particular, two portions of their property were so used, the 13.97 feet open space and a portion of the yard on the other side of the old frame shed; that on August 6th, 1941, an employee of the City of Woodbury constructed a concrete curb, at least six inches in height, along West Center Street and across the 13.97 foot space; that thereafter, that space was utilized less frequently as a driveway, and then, in most instances, when leaving complainant's property; and, that defendants frequently protested to complainant's tenant as to the use of defendants' property by the tenant's patrons and of damage caused by automobiles to defendants' buildings and improvements.
Sufficient has been said to demonstrate that there exists here a substantial dispute as to the present existence of any easement and the past or present location of the ten foot wide lane or right of way reserved in the several deeds of conveyance. While it is true that the jurisdiction of this court to hear and determine this matter was not challenged in defendant's answer, that challenge was made on argument and, under the decisions of this court and the Court of Errors and Appeals, my responsibility and my duty are clear.
Complainant seeks not only a finding by this court that an easement of way exists and a definition of its exact location *Page 499 
but, as well, mandatory action to force the removal of the recently erected building if it be determined that it obstructs such right of way.
Since the decision of our Court of Errors and Appeals in Hart
v. Leonard, 42 N.J. Eq. 416; 7 Atl. Rep. 865, it has been accepted in New Jersey that a substantial dispute over a private legal right in land is not ordinarily cognizable in a court of equity. As to interference by this court with a nuisance, erected and complete, Chancellor Zabriskie, in Attorney-General v.Heishon, 18 N.J. Eq. 410, said: "This court has, no doubt, power to cause nuisances to be removed and abated; nuisances to individuals, on bill, and public nuisances, like this, on information. But it will only exercise that power when the fact of nuisance is beyond doubt, or has been settled by a verdict at law. And where the nuisance is erected and complete, this court should not interfere without a trial at law, except, perhaps, in cases of irreparable mischief from its continuance, especially when there is a full and complete remedy at law."
The statement of Judge Vredenburgh, for the Court of Errors and Appeals, in Mayor, c., Borough of South Amboy v. PennsylvaniaRailroad Co., 77 N.J. Eq. 242, 249; 76 Atl. Rep. 1038, is apt: "A long array of authority has denied to courts of equity the right to entertain suits where there is a substantial dispute over the title to land, or over legal estates of easement in lands — a right which has hitherto remained within the exclusive cognizance of the courts of law of this state." See, also,Ballantine v. Harrison (Court of Errors and Appeals, 1883),37 N.J. Eq. 560, 561; Todd v. Staats (Court of Errors andAppeals, 1900), 60 N.J. Eq. 507; 46 Atl. Rep. 645; Mason v.Ross (Court of Errors and Appeals, 1910), 77 N.J. Eq. 527;77 Atl. Rep. 44; Imperial Realty Co. v. West Jersey andSeashore Railroad Co. (Court of Errors and Appeals, 1911),79 N.J. Eq. 168; 81 Atl. Rep. 837; Ostrander v. United New JerseyRailroad and Canal Co. (Court of Errors and Appeals, 1914),83 N.J. Eq. 645; 91 Atl. Rep. 319; Boro of West Long Branch v.Hoch (Court of Errors and Appeals, 1925), 99 N.J. Eq. 356;131 Atl. Rep. 889; Hayes v. Smith (Court of Errors andAppeals, 1928), 104 N.J. Eq. 146; 144 Atl. Rep. 636. *Page 500 
Since Hart v. Leonard, in those cases where the jurisdiction of the Court of Chancery has been questioned, the dispute most often presented has been as to the existence of an easement. In the instant case acquiescence in change of location or actual abandonment is charged, but the most strenuously disputed point is as to location of the right of way. The decisions cited concern easements of way and have dealt with not only questions of the existence or abandonment of an easement but, as well, with questions of extent and location. A study of these authorities demonstrates that the rule applied where a substantial dispute occurs as to the existence of an easement also applies where the substantial dispute is as to abandonment or the extent or location of a right of way.
In Borough of South Amboy v. Pennsylvania Railroad Co., the width of a road way was in dispute. The Court of Chancery adjudged that complainant had not established its easement to the full extent of its claim, but that its right was clear to a way "at least two rods" wide, and attempted to settle the rights of the parties upon that basis. The Court of Errors and Appeals held that such action was unwarranted for the reason, inter alia, "that the proper forum for settling the width of the highway is a court of law, and the proper tribunal for its correct determination is a trial by jury."
In Ballantine v. Harrison, the owner of a fee in a public street had constructed a dock and sought to prevent the town, by injunction, from extending the street over this dock down to the high water line. Chief-Justice Beasley said: "Legal rights are to be asserted and decided in the legal forum, and until so established, a court of equity will not interfere except in case of absolute necessity. And even when such intervention occurs, equity will not take to itself jurisdiction over the legalities of the controversy, but will content itself with conserving the subject of dispute, pending the litigation at law, * * *."
In Todd v. Staats the facts and the questions raised were strikingly similar to those in this case. There the owner of lands conveyed a part, covenanting to leave open six feet of land on the east of the division line of the lots so divided; he then covenanted with another to leave open four feet on *Page 501 
the west side of the division line "for the purpose of a road to the rear of said lots." By unity of seisin the way subsequently became extinct. Houses had, however, been erected on each part and fences had been placed "near" "but not corresponding with" the lines of the way as defined by deed. Subsequent conveyances contained the clause, "With the right and use of the lane between this and the lot of the said Mrs. Augustus F. Todd." Complainants contended that a right of way in a lane, bounded by the houses and fences, was created by implication from words used in a devise by the owner who had united seisin of the two tracts, or, that complainants had become entitled to the enjoyment of such right by adverse user for over twenty years. Vice-Chancellor Stevens, in his opinion, pointed out that successive tenants of the dominant tract, not parties to the suit, had indeed used some undefined part of it, but only occasionally and in succession, and that there was "no evidence of any value going to show that even a succession of tenants used it for any purpose whatever for a continuous and uninterrupted period extending back twenty years." The bill of complaint sought restraint of the defendant from erecting a building upon the westerly portion of a strip of land ten feet wide which, the complainants contended, was the lane between their lot and defendants' lot for the common use of both properties, and to compel defendant to fill up an excavation which he had made thereon. Defendant, by his answer, denied that complainants had any right of way over the land where he was building, and also denied that what he was doing would cause any irreparable injury to the complainants.
The Court of Errors and Appeals, Dixon, J., said: "Every question thus suggested lacks any element of an equitable nature, and is proper to be determined by the courts of law. The right which the determination of any of these questions in favor of the complainants will establish, is fundamental to the relief which they pray from the court of equity, and until that right is settled at law, the aid of the court of equity cannot properly be invoked. For this reason we think the Court of Chancery erred in attempting to decide whether the complainants really possessed the right of way which they *Page 502 
claimed in their bill. In view of the fact that the answer did not deny the jurisdiction of the court, and that one object of the bill is to secure affirmative relief in the form of a mandatory injunction for the restoration of the way to a passable condition, the proper course for the Chancellor was, not to dismiss the bill, but to retain it until the complainants had had reasonable opportunity to establish their title at law. Outcalt
v. George W. Helme Co., 15 Stew. Eq. 665, 676."
Abandonment was charged in Mason v. Ross. Complainant sought to restrain the defendant from interfering with an easement of way in a strip of land owned by defendant and on which the property of the complainant abutted. The proofs demonstrated that such an easement had existed in favor of the then owner of complainant's property some twenty or more years before. The defense interposed was that this easement had been abandoned by complainant and her predecessor in title, or one of them, and had ceased to exist prior to the institution of the suit. No question of jurisdiction in the Court of Chancery appears to have been raised in that court or on appeal. Chief-Justice Gummere, for the Court of Errors and Appeals, said: "We consider that this matter is not properly before us. The question whether a right of way over the lands of one person exists in favor of another is a purely legal one, and, where the existence of such an easement is in dispute, the proper tribunal in which to settle it is a court of law." * * * "In Hart v.Leonard, supra, our earlier decisions were analyzed, and the various classes of cases in which the power of equity to entertain jurisdiction over such disputes existed, were specified. The present case comes within none of those classes, and if the defendant had challenged the jurisdiction of the court the present bill should have been dismissed for lack of it. This not having been done the proper course for the court to have pursued was to retain the bill until the complainant had had a reasonable opportunity to establish her title at law. Todd v.Staats, supra."
In Imperial Realty Co. v. West Jersey and Seashore RailroadCo., Chief-Justice Gummere, for the Court of Errors and Appeals, declared that the court was not "entirely satisfied *Page 503 
that the dispute between the parties as to the present existence of the right asserted by the complainant was unsubstantial. But, be that as it may, there was certainly much more than a formal dispute with relation to the extent of that right. The complainant asserted that it had an easement of way over all portions of a strip of land twenty feet in width, belonging to the defendant, and this claim was disputed by the defendant." The court added: "* * * that the extent of a purely legal right, as well as the existence thereof, is a matter to be settled at law, and until it is so settled, the aid of a court of equity in its enforcement cannot properly be invoked."
In Ostrander v. United New Jersey Railroad and Canal Co., the abandonment of an easement of way or its extinguishment by obstruction and adverse possession was in substantial dispute and, upon appeal, jurisdiction of the equity court was denied and direction given that the cause be retained and complainant given a reasonable opportunity to establish its title at law.
In Boro of West Long Branch v. Hoch, a bill was filed by the borough to restrain defendants from obstructing a roadway, alleged to be a public street. The answer averred that it was a private way and asserted the right to obstruct or close it. The Vice-Chancellor found, as a fact, that the way in question was a public and not a private one. There was a unanimous reversal, the Court of Errors and Appeals declaring: "It is entirely settled by our decisions that where the fundamental right under which the complainant prays equitable relief is based upon the alleged existence of an easement in lands of another, and the existence thereof is in substantial dispute between the parties, the complainant must first establish by a suit at law the validity of his claim in order to justify the interference of a court of equity." It had been urged that counsel for the defendants consented that the issue of fact be determined by the Vice-Chancellor: "It is enough to say in disposing of this contention that counsel cannot, by mere silence or by express consent, confer upon courts of equity the power to determine litigated matters which, under our judicial system, must be settled in a court *Page 504 
of law; or, stated in another way, strip the law courts of jurisdiction conferred upon them under the constitution and transfer it to courts of equity. If counsel for the defendants had moved to dismiss the bill for lack of jurisdiction in a court of equity, a refusal to grant this motion could not have been legally justified. As no such motion was made, the proper course for the Court of Chancery to have pursued was to retain the bill until the complainant should have had a reasonable opportunity to establish its title by a suit at law. Todd v. Staats, 60 N.J. Eq. 507; Mason v. Ross, 77 N.J. Eq. 527."
In Hayes v. Smith, travel over defendants' land was admitted but was claimed to have been in many directions rather than in any defined path or direction and, if in a defined path, then in a location other than that described in the bill of complaint. The Vice-Chancellor concluded that the easement in favor of the complainant was not in substantial dispute. Reversing, the Court of Errors and Appeals held that "the question of the existence of the easement in favor of the respondents should have been determined by an appropriate action in a court of law and by a jury as a trier of the facts in dispute." The court concluded: "Such being our finding the situation is analogous to that in Mason v. Ross, supra, where it was held that the defendant below having challenged the jurisdiction of the Court of Chancery the bill should have been dismissed, or this not having been done, the proper course for the court below to have pursued was to retain the bill until the complainant had had a reasonable opportunity to establish the right at law."
Retention of a cause by a court of equity which lacks jurisdiction to determine issues raised until a judgment shall have been obtained at law, is not novel. The practice apparently was initiated by Lord Cottenham in 1841, in Hilton v. Earl ofGranville, 1 Cr. Ph. 284; 41 Reprint 498. As we have seen, this practice was adopted early in the judicial history of New Jersey and, in particular, has been approved in cases such as the present. Our older decisions merely suggested "an appropriate action in a court of law." More recently it has been held that if relief depends upon the disputed legal *Page 505 
title, the title may be settled either by an action at law or upon a feigned issue. Lake Lenore, Inc., v. Delaware,Lackawanna and Western Railroad Co., 113 N.J. Eq. 533;168 Atl. Rep. 178. Vice-Chancellor Backes, in that case said: "If tried at law upon a feigned issue, the postea is returned to the Chancellor to be reviewed by him according to law, and, though it is to satisfy his conscience, it also binds him as a matter of law, for his conscience will not be satisfied until a legally correct verdict is returned, and his judgment that the verdict is or is not according to law is reviewable as are judgments, on verdicts, of the Supreme Court."
In Hayes v. Smith, our Court of Errors and Appeals declared that the proper procedure to be followed by the equity court is to send "the issue of fact as to the easement alleged" to a court of law for trial, under section 8 of the Chancery Act of 1915, retaining the bill of complaint until such issue has been so determined.
In this case the bill will be retained and a reasonable opportunity will be afforded the complainant to establish at law the facts or the right for which he contends. An order may be submitted. *Page 506